Susan Lori WIEDENFELD, Appellant

v.

Charles Alan MARKGRAF, Appellee

No. 04–16–00172–CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed February 22, 2017

William F. Davidson, San Antonio, TX, for Appellant.

Lee Hernandez, Law Offices of Lee Hernandez, San Antonio, TX, for Appellee.

Sitting: Rebeca C. Martinez, Justice Patricia O. Alvarez, Justice Luz Elena D. Chapa, Justice

## MEMORANDUM OPINION

Luz Elena D. Chapa, Justice

Charles Alan Markgraf was ordered to pay Susan Lori Wiedenfeld spousal maintenance in their divorce decree. Wiedenfeld appeals the trial court's order denying her petition to continue receiving spousal maintenance. In three issues, Wiedenfeld contends: (1) the trial court did not have jurisdiction to find she was not disabled because she was receiving social security disability payments; (2) the trial court did not have the discretion to disregard her testimony regarding her disability; and (3) the trial court erred in requiring one of her attorneys to leave the courtroom after Texas Rule of Evidence 614 was invoked. Markgraf asserts a cross-point, contending the trial court erred in denying his motion to dismiss Wiedenfeld's petition because it was untimely filed. We affirm the trial court's order.

### BACKGROUND

Wiedenfeld and Markgraf were divorced in 2012. The divorce decree states the divorce was judicially pronounced and rendered on January 18, 2012, but signed on September 10, 2012. In the divorce decree, the trial court found Wiedenfeld was eligible for spousal maintenance and ordered Markgraf to pay her $400.00 per month

until the earliest of one of the following events occurred:

1. a review of the Order in three (3) years to see if [the] Spousal Maintenance Obligation should be continued; or

2. the death of either Petitioner or Respondent; or

3. the remarriage of [Wiedenfeld]; or

4. further orders of the court affecting the spousal maintenance obligation.

On July 30, 2015, Wiedenfeld filed a petition requesting the continuation of her spousal maintenance. Markgraf answered and filed a motion to dismiss, asserting Wiedenfeld's petition was untimely filed because she was required to seek a review by January 18, 2015, which was three years after the date the divorce decree was rendered on January 18, 2012. After a hearing, the trial court signed an order denying Wiedenfeld's petition and also denying Markgraf's motion to dismiss.

## MARKGRAF'S CROSS-POINT

 In his brief, Markgraf raises a cross-point asserting the trial court erred in denying his motion to dismiss. "A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal." TEX. R. APP. P. 25.1(c). In this case, the trial court's order denied Markgraf's motion; therefore, Markgraf's cross-point seeks to alter the trial court's order. Because Markgraf did not file a notice of appeal, however, he waived this complaint. *See* TEX. R. APP. P. 25.1(c); *Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002); *Soeffje v. Jones*, 270 S.W.3d 617, 631 (Tex. App.—San Antonio 2008, no pet.).

---

1. Subject to certain exceptions, Texas Rule of Evidence 614, commonly referred to as "the rule," requires a trial court to order witnesses

## EXCLUSION OF DAVIDSON UNDER RULE 614

 In her third issue, Wiedenfeld asserts the trial court erred in excluding Bill Davidson from the courtroom as a potential witness absent a showing that he was disqualified to represent her as one of her attorneys. With regard to Davidson's exclusion from the courtroom, the record reflects the following:

THE COURT: You're free to share anything you'd like with them, but is it correct that your client is cohabitating with another person?

MR. RICKERSON [Wiedenfeld's attorney]: No, Your Honor. No, Your Honor. That is absolutely not true. And, in fact, she's here to testify to it. I even have Mr. Davidson here to testify to it. They are not cohabitating, they are not. They don't know each other. They don't have—I'm sorry, not these two, but I don't think he—some of the things that he said calls for personal knowledge, and I don't think he has that personal knowledge, so we're ready to go, Your Honor. We're ready to put on testimony—

MR. HERNANDEZ [Markgraf's attorney]: So are we.

MR. RICKERSON:—and find out—I would like to know if these witnesses are going to be testifying. If they are, I'd like to invoke "The rule."[1]

(The witness rule invoked)

MR. HERNANDEZ: That's fine, Your Honor, we will invoke "The rule" as to Mr. Davidson because he's going to be a witness. He [sic] already has counsel, that's Mr. Rickerson.

MR. RICKERSON: Your Honor—

MR. HERNANDEZ: There may very well be rebuttal witnesses if their position is she's not living with him and

---

excluded from the courtroom on a party's request so they cannot hear other witnesses' testimony. TEX. R. EVID. 614.

doesn't know him. They are aware of that, so—

THE COURT: Okay. So, "The rule" has been invoked, so anybody who is not a party, who may be a potential witness, you need to step outside until it's your turn to testify. You may not speak to a party about what the testimony has been in the courtroom, okay?

MR. RICKERSON: Okay.

THE COURT: So, folks, is this gentlemen going to be a witness?

MR. RICKERSON: Yes, he will.

MR. HERNANDEZ: Yes.

MR. RICKERSON: He's going to call him. I'm not planning on calling Mr. Davidson.

MR. HERNANDEZ: I am definitely going to.

THE COURT: Okay, if you can step out.

MR. DAVIDSON: Your Honor, when we were downstairs we needed one hour because he was going to call nobody. So, we asked for an hour and a half. Now he wants to call me, he wants to call all these other people, so if this thing drags out to three hours, it's not our fault.

THE COURT: The announcement was two.

MR. HERNANDEZ: Two hours.

MR. DAVIDSON: I have never cohabitated with that woman.

THE COURT: Okay. Go ahead and step outside please, sir.

After Davidson left the courtroom, Wiedenfeld's attorney proceeded to call Markgraf as his first witness to testify.

In order to preserve a complaint for appellate review, the complaint must be made to the trial court by a timely request, objection or motion, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a). In this case,

Wiedenfeld never objected to Davidson's exclusion from the courtroom. Moreover, Wiedenfeld never requested that Davidson be permitted to remain in the courtroom unless Markgraf could prove he was subject to disqualification as Wiedenfeld's attorney. Accordingly, Wiedenfeld failed to preserve her third issue for this court's review.

## DENIAL OF CONTINUED SPOUSAL MAINTENANCE

In her first and second issues, Wiedenfeld contends the trial court erred in denying her petition for continued spousal maintenance because: (1) she presented evidence that she received social security disability; and (2) the trial court could not disregard her testimony regarding her disability.

### A. Basis for Spousal Maintenance and Burden of Proof for Continuation

Section 8.054 of the Texas Family Code governs the duration of a spousal maintenance order. *See* TEX. FAM. CODE ANN. § 8.054 (West Supp. 2016). Under section 8.054(b), the trial court may order spousal maintenance for a spouse who qualified for maintenance under section 8.051(2)(A) or (C) to continue "for as long as the spouse continues to satisfy the eligibility criteria prescribed by the applicable provision." *Id.* at § 8.054(b). Section 8.054(c) authorizes the trial court to "order the periodic review of [an] order for maintenance under Subsection (b)." *Id.* at § 8.054(c).

In this case, the 2012 divorce decree ordered the spousal maintenance obligation to be reviewed in three years to determine if it should be continued. Because a trial court is only authorized to order a periodic review of spousal maintenance ordered under section 8.054(b), the trial court must have determined Wiedenfeld qualified for maintenance under section 8.051(2)(A) or (C) when the spousal

maintenance was initially ordered. *See id.* at §§ 8.054(b), 8.054(c). Section 8.051(2)(C) applies only if the spouse is a custodian of a child of the marriage. *See id.* at § 8.051(2)(C). Because Wiedenfeld and Markgraf did not have children, the trial court necessarily determined Wiedenfeld qualified for maintenance under section 8.051(2)(A) because she was "unable to earn sufficient income to provide for [her] minimum reasonable needs because of an incapacitating physical or mental disability." *See id.* at § 8.051(2)(A); *see also In re Brunin*, No. 04-04-00893-CV, 2005 WL 839531, at *2 (Tex. App.—San Antonio Apr. 13, 2005, orig. proceeding) (mem. op.) (concluding spousal maintenance in divorce decree was implicitly based on finding spouse incapacitated because decree provided that spouse could seek a continuation of the support after two years). Therefore, as the party seeking to continue receiving spousal maintenance, Wiedenfeld had the burden to prove by a preponderance of the evidence that: (1) she continued to have an incapacitating physical disability; and (2) her incapacitating physical disability prevents her from earning sufficient income to provide for her minimum reasonable needs. *See Hackenjos v. Hackenjos*, 204 S.W.3d 906, 909 (Tex. App.—Dallas 2006, no pet.); *Carlin v. Carlin*, 92 S.W.3d 902, 905 (Tex. App.—Beaumont 2002, no pet.).

### B. Standard of Review

We review a trial court's decision regarding spousal maintenance under an abuse of discretion standard. *See Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied); *see also* Tex. Fam. Code Ann. § 8.054(b) (providing court *may* order maintenance to continue). A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *See Dunn*, 177 S.W.3d at 396; *Pickens*, 62 S.W.3d at 214.

Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *See Dunn*, 177 S.W.3d at 396; *Pickens*, 62 S.W.3d at 214. In general, a trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

### C. Receipt of Social Security Disability

In her first issue, Wiedenfeld contends the trial court did not "have the jurisdiction to make a finding contrary to a government entitlement." Because she is receiving social security disability payments, Wiedenfeld argues the trial court's implicit finding that she was not disabled interferes with the executive branch's determination that she was disabled. Wiedenfeld further argues this court "should find the receipt of a Government Disability, such as, or specifically the receipt of Social Security Disability is prima fascia [sic] proof of disability." We disagree.

A trial court's decision to continue spousal maintenance is discretionary under the statute, even if a spouse is permanently disabled. *O'Carolan v. Hopper*, 414 S.W.3d 288, 308 (Tex. App.—Austin 2013, no pet.); *Tellez v. Tellez*, 345 S.W.3d 689, 693 (Tex. App.—Dallas 2011, no pet.); *Stewart v. Stewart*, No. 01-04-01126-CV, 2006 WL 1028391, at *3 n.3 (Tex. App.—Houston [1st Dist.] Apr. 20, 2006, no pet.) (mem. op.). Accordingly, even assuming Wiedenfeld's receipt of social security disability payments is evidence that she has a permanent disability, the trial court still had the discretion to deny her request for

the continuation of her spousal maintenance. Therefore, Wiedenfeld's first issue is overruled.

D. Trial Court's Discretion to Disregard Wiedenfeld's Testimony

In her second issue, Wiedenfeld contends the trial court erred in disregarding her testimony regarding her disability. As previously noted, because Wiedenfeld sought to continue receiving spousal maintenance, she had the burden to prove by a preponderance of the evidence that: (1) she continued to have an incapacitating physical disability; and (2) her incapacitating physical disability prevents her from earning sufficient income to provide for her minimum reasonable needs. *See Hackenjos*, 204 S.W.3d at 909; *Carlin*, 92 S.W.3d at 905. We review the evidence in the light most favorable to the trial court's finding, and the trial court, as the factfinder in this case, was the sole judge of the credibility of the witnesses and could believe or disbelieve any witness's testimony. *See Peck v. Peck*, No. 03-14-00440-CV, 2016 WL 3917131, at *3 n.16 (Tex. App.—Austin July 15, 2016, no pet.) (mem. op.); *In re Marriage of Boyd*, No. 07-14-00211-CV, 2015 WL 3941614, at *4 (Tex. App.—Amarillo June 24, 2015, no pet.) (mem. op.); *Greco v. Greco*, No. 04-07-00748-CV, 2008 WL 4056328, at *8 (Tex. App.—San Antonio Aug. 29, 2008, no pet.) (mem. op.). If some evidence reasonably supports the trial court's decision that Wiedenfeld did not meet her burden, the trial court did not abuse its discretion in denying Wiedenfeld's motion. *See Butnaru*, 84 S.W.3d at 211.

Both Markgraf and Wiedenfeld testified at the hearing on the motion to continue spousal maintenance. Markgraf testified Wiedenfeld's daughter informed him about one year before the hearing that Wiedenfeld was living with Davidson. Markgraf testified he did not know if Wiedenfeld was currently living with Davidson, but he did know Wiedenfeld was currently in a relationship with Davidson. Markgraf testified he assisted Wiedenfeld while they were married with filing for social security disability based on her medical issues. Markgraf testified he did not believe Wiedenfeld was unable to obtain or retain employment and had worked jobs for cash toward the end of their marriage, including working for Davidson.

Wiedenfeld testified she receives social security disability, spousal maintenance, and also receives rent from a tenant who lives with her; however, her monthly expenses exceed her monthly income. Wiedenfeld admitted Davidson is her boyfriend but denied he ever lived with her. Wiedenfeld described her various medical conditions included heart disease, diabetes, arthritis, memory problems, lupus, Sjogren's disease, foot problems, and back problems. She believes her medical conditions affect her ability to obtain and maintain employment because she did not believe an employer "is going to like for me to be calling in saying that I am having a bad day, and I can't function." As far as side jobs, Wiedenfeld testified she watches her roommate's dogs when her roommate goes out of town.

Based on the testimony, the trial court could have believed Markgraf's testimony suggesting Wiedenfeld was able to obtain and retain employment. Although Wiedenfeld testified she did not believe she could do so, she provided no testimony about any effort to obtain employment and did not dispute Markgraf's testimony that she had worked jobs for cash, including working for Davidson. Deferring to the trial court's evaluation of the credibility of the witnesses, we hold some evidence supported the trial court's implicit finding that Wiedenfeld's medical condition did not prevent her from earning sufficient income to pro-

vide· for her minimum reasonable needs. *See Carlin,* 92 S.W.3d at 911 ("Because she fully admits that she has done nothing to seek employment or make any inquiries related thereto, the 'link' between what evidence there is as to Margaret's physical limitations due to the arthritis and her being unable to support herself through appropriate employment lacks the probative force necessary to prove the statutory conditions for continuing the spousal maintenance."). Therefore, the trial court did not abuse its discretion in denying Wiedenfeld's motion to continue the spousal maintenance, and Wiedenfeld's second issue is overruled.

CONCLUSION

The order of the trial court is affirmed.