

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00198-CV

ODELIA LAURA CAUDILLO, APPELLANT

V.

DANIEL CAUDILLO, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2015-517,163; Honorable Jim Bob Darnell, Presiding

April 24, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Daniel Caudillo and Odelia Laura Caudillo were divorced by a *Final Decree of Divorce* signed April 24, 2019. As part of the decree, Daniel was ordered to pay spousal maintenance in the amount of $400 per month, with the first payment being due retroactively on November 1, 2018, and each subsequent payment being due on the first day of each consecutive month until the earliest of one of several listed events occurred. Odelia argues the trial court abused its discretion by (1) changing the start date and duration of the court-ordered spousal maintenance and (2) determining she was eligible

for spousal maintenance under section 8.054(a)(1)(C) instead of section 8.054(a)(2)(A) of the Texas Family Code. For the reasons that follow, we will affirm the divorce decree of the trial court.

**BACKGROUND**

Daniel and Odelia married in 1977 and separated in 2015. On August 24, 2015, Daniel filed for divorce. Odelia counter-petitioned, requesting temporary spousal support and post-divorce spousal maintenance. A hearing regarding temporary orders was held before an associate judge. At the conclusion of that hearing, the associate judge ordered Daniel to pay to Odelia $700 per month in temporary spousal support. Daniel appealed that ruling to the district court. Following a full *de novo* hearing, the judge ordered Daniel to pay to Odelia $400 per month, beginning on November 15, 2015. Daniel did not begin paying at that time and Odelia filed a motion to enforce the order. Daniel began paying the temporary spousal support in April 2016.

On October 15, 2018, the court held a contested hearing concerning the disposition of property in relation to Daniel and Odelia's divorce. During that hearing, both parties testified. Odelia testified she was disabled. She told the court it affected her everyday life and her ability to obtain employment. She testified she began receiving social security disability benefits the previous year. She also testified "[t]here's no way I can go back and get a job . . . [b]ecause I'm disabled. I got chronic arthritis, osteoarthritis. I can't do anything physical that much." She said, "I can't lift, crawl, climb stairs, stoop, bend or—everything." She testified that if she tries to do these things, it is "painful, very painful." Odelia also testified about her income from her disability benefits, her retirement, as well as her customary monthly expenses. She answered "No" when asked whether

2

she would be able to pay for all of the expenses without Daniel's spousal support. She told the court her previous employment had been as a teacher but that she had not worked in that capacity for many years.

Daniel answered affirmatively when asked whether he was aware that Odelia was disabled. He also stated that he knew the federal government had determined she was unable to work because of her disability. With regard to spousal maintenance, he said he "could live with what I'm giving her right now," which was the $400 per month ordered after the *de novo* temporary hearing.

At the close of the hearing, the court asked for additional documentation and took the matter under advisement. On October 18, 2018, the judge sent an email to counsel with an attachment entitled "Property Division." That document included the statement, "Daniel will pay $400 per month beginning Nov[ember] 1, 2018." The email was filed with the court on October 29, 2018. Odelia's attorney did not receive notice of the October 18 email until October 29 because the October 18 email was sent to an incorrect email address. Through email exchanges between October 18 and October 29, Daniel's attorney and the judge discussed the duration of the spousal maintenance award. The judge responded to Daniel's inquiry concerning the duration of the award, stating "10 yrs but would start when payments started under temporary orders." Daniel had been ordered to pay temporary spousal support beginning in November 2015. The *Final Decree of Divorce* provided, however, that Daniel pay spousal maintenance in the amount of $400 per month, "with the first payment being due on November 01, 2018, and a like amount being due on the first (1st) day of each consecutive month thereafter until the earliest of one of the following events: (1) seven (7) years; (2) death of either [Daniel] or

3

[Odelia]; (3) remarriage of Odelia [ ]; or (4) further orders of the Court affecting the spousal maintenance obligation . . . ."

In early 2019, Odelia filed motions to enter judgment, requesting the trial court to sign her proposed *Final Decree of Divorce,* which contained a spousal maintenance provision that corresponded to the October 18 email, which included the memorandum stating that "Daniel will pay $400 per month beginning November 01, 2018." According to Odelia's interpretation, the email constituted a rendition of judgment providing for indefinite spousal maintenance. In April 2019, the trial court held a hearing on Odelia's motion for judgment. At that hearing, Daniel's counsel acknowledged the email conversation between himself and the judge but argued there was not a substantial change in the court's ruling; rather, it was a mere clarification. Odelia argued the email ruling left open the question of whether the court found she was disabled and also changed the beginning date of the spousal maintenance award. On April 24, 2019, the trial court signed its *Final Decree of Divorce,* containing the spousal maintenance provision described above.

Thereafter, on June 7, 2019, the trial court filed findings of fact and conclusions of law. The conclusions of law included the above-stated provision for spousal maintenance, with the exception of adding "or co-habitation" to the third contingency. The trial court made no findings or conclusions that specifically contain the words "disabled" or "disability" with reference to Odelia. Rather, the court made a more general finding that Odelia "will lack the ability to earn sufficient income to provide for [her] minimum reasonable needs on dissolution of the marriage." The court further stated that, in determining the nature, amount, duration, and manner of payment of spousal

4

maintenance, it had considered the "future earning potential of the parties" and the "ability of each party to meet their minimum reasonable needs."

### ANALYSIS

### ISSUE ONE—MODIFICATION OF SPOUSAL MAINTENANCE ORDER

In her first issue, Odelia contends the October 18 email and attached memorandum constituted a rendition of judgment and the trial court erred because the *Final Decree* contained a provision that changed the start date and duration of spousal maintenance from that set forth in the email. We disagree.

Judgment is *rendered* when the trial court officially announces its decision in open court or by written memorandum filed with the clerk. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857-58 (Tex. 1995) (citations omitted). The judge's intention to render judgment in the future cannot be a present rendition of judgment. *Id.* at 858 (citation omitted). The rendition of judgment is "a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *Id.* (citation omitted). A judgment is "'signed' when a judge actually signs a written order or decree; and, it is 'entered' when the clerk performs the task of entering it in the minutes of the court. *Cook v. Cook*, 243 S.W.3d 800, 804 (Tex. App.—Fort Worth 2007, no pet.). Whether a trial court has rendered a judgment is a question of fact. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986).

Citing *Cook*, 243 S.W.3d at 804, Odelia begins her argument by saying "[t]he entry of judgment goes through three stages: rendition, signing, and entry." Odelia argues the judge rendered his ruling when he signed, dated, and filed the memorandum entitled

5

"Property Division," attached to his October 18 email which included the statement, "Daniel will pay $400 per month beginning Nov[ember] 1, 2018." Because she considers this document to be the judgment *rendered* by the court, she contends the *Final Decree of Divorce* later entered is incorrect because it contains different terms. We disagree.

The October 18 email to which the "Property Division" memorandum was attached stated as follows:

> Attached is a copy of property/debt division in Caudillo case. Since Daniel Caudillo filed divorce petition, Ben will prepare decree; provide copy to Terri and Megan for their review before e-filing. If anyone feels I left something out, let me know.

This language does not indicate the judge's intent to render a final appealable order at the time he sent the email. In fact, the judge invited changes by asking the parties to notify him if he "left something out." In the area of family law, this is a common practice, where many of the "details" contained in a final decree of divorce are not orally pronounced, and the trial judge often exercises discretion when fine-tuning his ruling prior to formal rendition. Further, the mere filing of that email and memorandum did not alter the judge's intent or constitute the rendition of a ruling any more than the email itself did. The language of the email still indicated an intent to render a ruling at a later date, after the parties had reviewed the decree and had the opportunity to suggest changes or additions to the judge.

We also note Odelia's argument that the judge changed his October 18 email "decision" from an indefinite spousal maintenance award to one that was limited to a period of seven years. Again, the mere fact that the email did not include the specific term of payments did not mean that the trial judge had *rendered* a decision that the

spousal maintenance payments would continue indefinitely. Similar to the other details to be included in the final order, the term of payments was a detail that remained within the discretion of the trial judge.

As Odelia recognizes, a court *may* order maintenance to the spouse who is unable to earn sufficient income to provide for his or her minimum reasonable needs due to a physical or mental disability for as long as the spouse continues to satisfy the eligibility criteria prescribed by the applicable provision. TEX. FAM. CODE ANN. § 8.054(b) (West Supp. 2019). While Odelia seems to take from this statute that the district court was required to order spousal maintenance for that entire period, the unambiguous language of the statute is discretionary in nature, setting forth that the court "may" make such an order. It does not say that the court "shall" or is otherwise mandated to order spousal maintenance for the entire period of disability.

Odelia also complains that the judge improperly took into account the spousal support she received under the temporary orders when he reduced her spousal support to a period of seven years in the *Final Decree*. As support for her argument, she lists the factors set forth in section 8.052 of the Family Code, noting that none of them include support received under temporary orders as that support is to assist with needs during the pending suit. TEX. FAM. CODE ANN. § 8.052. Again, the language of section 8.052 is informative here. The beginning of that provision provides "[a] court that determines that a spouse is eligible to receive maintenance under this chapter shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors, *including*. . . [eleven enumerated factors]." (Emphasis added). TEX. FAM. CODE ANN. § 8.052. The use of the word "including" indicates that a judge should consider the eleven

7

factors set forth in section 8.052, but it does not preclude a judge from considering other factors. The list is not exclusive. We thus do not find the trial court abused its discretion here by considering factors, if it did, not specifically enumerated in section 8.052 of the Family Code.

Lastly, we address Odelia's argument that the *Final Decree of Divorce* does not conform to the October 29 email because the decree states Daniel is to pay spousal maintenance for a period of seven years commencing November 1, 2018, whereas the October 29 email itself did not specify any term of duration and the email chain regarding clarification of the court's order provided for "10 yrs but would start when payments started under temporary orders." The *de novo* temporary orders provided that spousal maintenance was to commence on November 15, 2015. Taking into consideration the temporary spousal maintenance payments that had already accrued, the number of spousal maintenance payments was the same. Either way, Daniel was obligated to make the same spousal maintenance payment ($400 per month), for the same number of months (November 2015 through November 2025).[1] As such, we cannot find the district court abused its discretion here either. Accordingly, we resolve Odelia's first issue against her.

### ISSUE TWO—ELIGIBILITY FOR SPOUSAL MAINTENANCE

Via her second issue, Odelia contends the district court erred when it determined the duration of her spousal maintenance under section 8.054(a)(1)(C) of the Texas Family

---

[1] We acknowledge Odelia's argument that Daniel did not actually pay the ordered temporary spousal maintenance in November 2015. Odelia filed a *Motion for Enforcement* after Daniel failed to make the payments. Daniel began making the payments on April 16, 2016. We do not find that the court abused its discretion in declining to alter the spousal maintenance award time period based on those events.

Code, providing that a court may not order maintenance that remains in effect for more than ten years after the date of the order, if the spouses were married for thirty years or more, rather than section 8.054(a)(2)(A), which provides that the court shall limit the duration of a maintenance order to the "shortest reasonable period that allows the spouse seeking maintenance to earn sufficient income to provide for the spouse's minimum reasonable needs, unless the ability of the spouse to provide for the spouse's minimum reasonable needs is substantially or totally diminished because of: (A) physical or mental disability of the spouse seeking maintenance." *See* TEX. FAM. CODE. ANN. § 8.054(a)(1)(C); § 8.054(a)(2)(A) (West Supp. 2019).

We review the trial court's decision to award spousal maintenance under an abuse of discretion standard of review. *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). *See also In re Marriage of Boyd*, No. 07-14-00211-CV, 2015 Tex. App. LEXIS 6452, at *4 (Tex. App.—Amarillo June 24, 2015, no pet.) (mem. op.) (citations omitted). Absent a clear abuse of discretion, we will not disturb the trial court's decision to award spousal maintenance. *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.). Under this standard of review, the proper inquiry is whether the trial court's assessment of spousal maintenance was arbitrary or unreasonable. *Garcia v. Garcia*, 170 S.W.3d 644, 649 (Tex. App.—El Paso 2005, no pet.) (citations omitted). Consequently, we must "determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable." *Id.*

The trial court may exercise its discretion to award spousal maintenance only if the party seeking maintenance meets specific statutory eligibility requirements. *Roberts v.*

*Roberts*, 531 S.W.3d 224, 227-29 (Tex. App.—San Antonio 2017, pet. denied) (citing *Slicker v. Slicker*, 464 S.W.3d 850, 859 (Tex. App.—Dallas 2015, no pet.)).  Texas Family Code section 8.051(2)(A) provides that "in a suit for dissolution of a marriage" the trial court may order maintenance if the spouse seeking maintenance will lack sufficient property, on dissolution of the marriage, to provide for the spouse's minimum reasonable needs and that spouse is "unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical or mental disability."

Once a trial court has determined that a spouse is eligible for spousal maintenance pursuant to section 8.051(2)(A), the trial court may order maintenance for "as long as the spouse [seeking maintenance] continues to satisfy the eligibility criteria prescribed by [section 8.051(2)(A)]."  *See* TEX. FAM. CODE. ANN. § 8.054(b) (West Supp. 2019).  Therefore, while Odelia is incorrect in her contention that the trial court had the authority to order spousal maintenance for more ten years pursuant to section 8.054(a)(2)(A), she would nonetheless be correct if she were contending the trial court had that authority pursuant to section 8.054(b).  *Roberts*, 531 S.W.3d at 228.

As fact finder, the trial court may reasonably infer an individual's incapacity from circumstantial evidence or the competent testimony of a lay witness, including the testimony of the person seeking spousal maintenance.  *Roberts*, 531 S.W.3d at 228 (citing *Reina v. Gen. Accident Fire & Life Assur. Corp.,* 611 S.W.2d 415, 417 (Tex. 1981) (no medical evidence of disability required in case decided under former workers' compensation statute); *Pickens v. Pickens*, 62 S.W.3d 212, 215-16 (Tex. App.—Dallas 2001, pet. denied)).  A physical disability or incapacity does not need to be proven by medical evidence.  *Roberts*, 531 S.W.3d at 228-29 (citing *Reina*, 611 S.W.2d at 417;

*Pickens*, 62 S.W.3d at 216; *Galindo v. Galindo*, 04-13-00325-CV, 2014 Tex. App. LEXIS 3775 (Tex. App.—San Antonio Apr. 9, 2014, no pet.) (mem. op.) (upheld disability finding based solely on testimony of party seeking spousal maintenance)). "In fact, the testimony of the injured party will support a finding of incapacity even if directly contradicted by expert medical testimony." *Roberts*, 531 S.W.3d at 228 (citing *Pickens*, 62 S.W.3d at 216). There is "no authority directly addressing the quantum of evidence required to prove incapacity in a spousal maintenance action." *Roberts*, 531 S.W.3d at 228-29 (citing *Galindo*, 2014 Tex. App. LEXIS 3775, at *4 (quoting *Pickens*, 62 S.W.3d at 215); *Smith v. Smith*, 115 S.W.3d 303, 309 (Tex. App.—Corpus Christi 2003, no pet.)).

In the matter before us, Odelia told the court she began receiving social security disability the previous year. On appeal, her counsel discusses the difficulty of satisfying the burden to receive such benefits. Odelia testified before the district judge that "[t]here's no way I can go back and get a job . . . [b]ecause I'm disabled. I got chronic arthritis, osteoarthritis. I can't do anything physical that much." She further testified saying, "I can't lift, crawl, climb stairs, stoop, bend or—everything." She testified that if she tries to do these things, it is "painful, very painful." While Odelia did not testify about any efforts to obtain employment of any kind or explain why her disability prevented her from doing any type of work, such evidence was unnecessary since Daniel testified he was aware Odelia was disabled and he did not otherwise contest that issue.

On appeal, Odelia contrasts *Galindo*, 2014 Tex. App. LEXIS 3775, at *6-7 with *Wiedenfeld v. Markgraf*, 534 S.W.3d 14, 20 (Tex. App.—San Antonio 2017, pet. denied) to support her contention that the evidence she presented to the district court was sufficient to allow it to reasonably infer she was disabled. While we agree the court could

11

have made such a finding, we do not agree it was required to make such a finding. Furthermore, even if the trial court determined Odelia was disabled, it was not required to order spousal support for an indefinite duration.

In *Galindo*, the wife testified she was diagnosed with a "neuromuscular disorder of the intestinal track" in 2000. *Galindo*, 2014 Tex. App. LEXIS 3775, at *6. She told the court it causes her to "get severe pain the upper gut area, and it is so bad that I just start vomiting and going to the bathroom and can't move . . . I just have to go to the hospital." *Id.* The wife further testified that in addition to the acute symptoms, she is "always in at least moderate pain and suffers from anxiety." *Id.* In addition, she took medication which also impaired her abilities. *Id.* Given those facts, the appellate court concluded a fact finder could reasonably infer the wife's incapacity from her testimony and the substance of her testimony was "such that she qualifies for spousal maintenance under section 8.051(2)(A)." *Id.* at *7. Odelia encourages this court to find that the evidence in this case is similar to that presented in *Galindo* and to find that the trial court erred in its award in the *Final Decree of Divorce*.

Odelia contrasts her case with that in *Wiedenfeld*, 534 S.W.3d at 19, in which the former husband testified that during their marriage, he helped his wife obtain social security disability benefits based on her medical issues. He also testified he did not believe his former wife was unable to obtain or retain employment because she had worked near the end of their marriage. The former wife testified she received disability benefits and described her various medical conditions which included "heart disease, diabetes, arthritis, memory problems, lupus, Sjogren's disease, foot problems, and back problems." *Id.* She stated she believed her medical conditions affected her ability to

obtain and maintain employment because she did not believe an employer would be pleased if she had to call in sick because she was unable to function. *Id.* She did note she watched her roommate's dogs when her roommate went out of town as a "side job." *Id.* In that situation, the appellate court concluded the trial court could have believed the former husband's testimony and noted the former wife did not testify about any effort to obtain employment and did not dispute the fact that she had worked near the end of their marriage. Odelia argues *Wiedenfeld* is distinguishable from her case because the former husband provided controverting testimony about the former wife's disability, whereas Daniel did not.

We agree with Odelia that she presented testimony somewhat similar to the testimony set forth in *Galindo.* Likewise, we agree that, unlike the former husband in *Wiedenfeld,* Daniel did not controvert Odelia's assertion she was disabled. When asked whether he was aware that Ms. Caudillo was disabled, he responded, "Yes, ma'am." He was then asked, "And you understand that on the basis of that disability that the federal government has determined that she can't work?" He responded, "That's what I've been told." And, we agree Odelia also established she received social security disability benefits; whereas, unlike the former wife in *Wiedenfeld,* Odelia did not present any testimony concerning what efforts she had made to obtain any kind of employment and did not explain how or why her disability prohibited her from obtaining any type of gainful employment.

Considering the two cases cited to us by Odelia, and considering the record before us, we do not find the trial court abused its discretion. While we agree with Odelia that her testimony alone would have been sufficient to support a finding that she suffered from

a disability, we do not agree with her position that the trial court was required to find she had such a disability. The trial court was free to determine the credibility of the witnesses and the weight to be given their testimony, and it was within its discretion to conclude Odelia was not disabled to the degree that she required indefinite spousal maintenance payments from Daniel. *See Wiedenfeld*, 534 S.W.3d at 19 (the trial court is the sole judge of the credibility of the witnesses and can believe or disbelieve any witness's testimony).

Odelia again contends the trial court erred when it substantially changed the decision disclosed in the October 18 email because all of the evidence presented at the final hearing was uncontroverted and supports a finding that she was disabled, making an award of spousal maintenance for an indefinite period of time proper. Again, Odelia's argument presupposes that the October 18 email was the judge's rendered ruling. As we discussed in our analysis of Odelia's first issue, that is not the case. The trial judge was not required to find Odelia disabled, nor was he required to find that she was entitled to an award of spousal maintenance for an indefinite period of time even if she was. *See O'Carolan v. Hopper*, 414 S.W.3d 288, 308 (Tex. App.—Austin 2013, no pet.) ("Extended maintenance is discretionary under the statute, even if a spouse is permanently disabled.") (citation omitted).

For these same reasons, we do not agree the judge erred by failing to include a finding that Odelia was disabled. Odelia argues, citing *In re S.R.O.*, 143 S.W.3d 237, 243 (Tex. App. –Waco 2004, no pet.), that because the evidence supports a finding that she was disabled and because neither party notified the court that the finding on that element had been omitted, nor did they request a finding on that element, we must presume the trial court made a finding on that element in a way that supports its judgment.

14

While the *Findings of Fact and Conclusions of Law* do not expressly include a finding that contains the word "disability" or "disabled," the findings do include one that says "Odelia Laurie Caudillo was married to Daniel Caudillo for ten (10) years or longer and will lack the ability to earn sufficient income to provide for the spouse's minimum reasonable needs on dissolution of the marriage." This was among the factors considered and appears to include what the judge believed regarding Odelia's disability and its effect on her ability to work.

Odelia argues that the judge "must have either abused his discretion in awarding maintenance for an indefinite period of time, or he implicitly found [Odelia] is disabled such that his order complies with Texas Family Code § 8.054(a)(2)." We have already determined the judge did not award spousal maintenance for an indefinite period of time because the October 18 email was not a rendition of the trial court's ruling. And, we have already determined the judge included a finding that encompassed his conclusion regarding Odelia's disability and there is no reason to conclude the judge abused his discretion in making that finding or in including the spousal maintenance award in the *Final Decree of Divorce.* Accordingly, we overrule Odelia's second issue.

### CONCLUSION

Having resolved each of Odelia's issues against her, we affirm the *Final Decree of Divorce* of the trial court.


Patrick A. Pirtle
Justice


15