

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00142-CV

James D. **TURNER**,
Appellant

v.

Stacy L. **TURNER**,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 2132B
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Luz Elena D. Chapa, Justice
    Lori I. Valenzuela, Justice

Delivered and Filed: May 8, 2024

AFFIRMED

Appellant James Turner and appellee Stacy Turner were married for twenty-eight years when Stacy filed her divorce petition. Following a bench trial, the trial court signed a final decree finding Stacy was eligible for spousal maintenance in the amount of $2,000 per month for five years. In four issues, James challenges the trial court's spousal maintenance award. We affirm.

### BACKGROUND

In her petition for divorce, Stacy requested, among other things, post-divorce maintenance. After James counterclaimed, the trial court entered temporary orders. Following a bench trial, the

trial court signed a final decree ordering, as relevant to this appeal, James to pay spousal maintenance in the amount of $2,000 per month for five years. The trial court entered findings of fact and conclusions of law in support of its judgment. James only appeals the trial court's award of spousal maintenance.

In four appellate issues that we construe as two, James challenges (1) Stacy's spousal maintenance eligibility and (2) the amount and duration of maintenance payments. In response, Stacy presents two principal arguments. First, Stacy asserts the final decree is agreed upon; therefore, James waived any complaints about the substance of the decree. Second, Stacy contends the trial court acted appropriately in awarding spousal maintenance.[1] Because Stacy's first argument is dispositive if she is correct, we address it first.

**AGREED DIVORCE DECREE**

*Standard of Review and Applicable Law*

Stacy claims James waived any complaint on appeal because he did not object to the award of spousal maintenance during trial and because the final decree states it is an agreed decree. "A party cannot appeal from a judgment to which [he] has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation." *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 161 (Tex. App.—Dallas 2008, no pet.). "A party's consent to the trial judge's entry of judgment waives any error, except for jurisdictional error, contained in the judgment, and that party has nothing to properly present for appellate review." *Id.* at 162. "The rationale of such a rule is that a

---

[1] Stacy additionally asserts James failed to adequately brief his merits arguments; therefore, Stacy concludes that James has waived his appellate arguments. *See* TEX. R. APP. P. 38.1(i). Liberally construing James's brief, we overrule Stacy's argument and address the merits of James's contentions. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver.").

party will not be allowed to complain on appeal of an action or ruling which she invited or induced." *Id.*

"To have a consent judgment, each party must explicitly and unmistakably give its consent." *In re R.S.*, No. 05-17-00848-CV, 2019 WL 1578249, at *4 (Tex. App.—Dallas Apr. 12, 2019, no pet.) (mem. op.). "The presence of a party's signature approving the decree does not render the decree an agreed or consent judgment." *Id*. "[T]he phrase 'approved as to form and substance,' standing alone, is insufficient to establish an agreed judgment." *Durden v. McClure*, 281 S.W.3d 137, 140 (Tex. App.—San Antonio 2008, no pet.). However, the same phrase— approved as to form and substance—"may describe an agreed judgment when coupled with additional recitations in the judgment." *Id.*; *Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997) ("Like other judgments, courts are to construe divorce decrees as a whole toward the end of harmonizing and giving effect to all that is written."); *see, e.g.*, *Hicks v. Hicks*, 348 S.W.3d 281, 283 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The body of the judgment must suggest, for example, that the judgment was rendered by consent.").

*Application*

Here, the parties' attorneys signed the decree "approved as to form only." James and Stacy, however, signed the decree "approved and consented to as both form and substance." Nevertheless, during the bench trial, James testified extensively regarding his objections to any award of spousal maintenance to Stacy. James, through his testimony objecting to Stacy's request for spousal maintenance, "did not explicitly and unmistakably give his consent to that portion of the divorce decree and did not waive his right of appeal." *Baw v. Baw*, 949 S.W.2d 764, 767 (Tex. App.— Dallas 1997, no writ); *cf. Boufaissal*, 251 S.W.3d at 162 (holding wife could not appeal agreed divorce decree where wife "specifically agreed that the terms of the decree memorialized" from a prior agreement.); *Hilms v. Hilms*, No. 04-07-00631-CV, 2008 WL 859218, at *2 (Tex. App.—

San Antonio Apr. 2, 2008, no pet.) (mem. op.). Accordingly, we conclude James did not waive his right to contest the award of spousal maintenance, and we turn to the substance of James's arguments on appeal.

## SPOUSAL MAINTENANCE

### *Standard of Review*

"We review a trial court's decision regarding spousal maintenance under an abuse of discretion standard." *Wiedenfeld v. Markgraf*, 534 S.W.3d 14, 18 (Tex. App.—San Antonio 2017, no pet.). "A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Id.* "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision." *Scott v. Scott*, No. 04-17-00155-CV, 2018 WL 2694817, at *3 (Tex. App.—San Antonio June 6, 2018, no pet.) (mem. op.). "Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion." *Wiedenfeld*, 534 S.W.3d at 18. "Because of the overlap between the abuse-of-discretion and sufficiency-of-the-evidence standards of review, we engage in a two-step analysis to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of that discretion." *In re Elabd*, 589 S.W.3d 280, 284 (Tex. App.—Waco 2019, no pet.).

James presents a legal sufficiency challenge to the trial court's spousal maintenance award. "To prevail on a legal-sufficiency challenge on an issue for which the opposing party had the burden of proof, the complaining party must show that there is no evidence that would enable reasonable and fair-minded people to reach the verdict under review." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). There is no evidence to support a judgment "if (1) there is a complete lack of evidence of a vital fact, (2) the court is barred by rules of law or of

evidence from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a scintilla of evidence offered to prove a vital fact, or (4) the evidence conclusively establishes the opposite of the vital fact." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020) (internal quotations omitted). "When reviewing a legal-sufficiency challenge, we consider all of the evidence supporting the judgment, 'credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not.'" *Elabd*, 589 S.W.3d at 284 (quoting *City of Keller*, 168 S.W.3d at 827). When the case is tried to the bench, and when, such as here, "the trial court issues written findings of fact and conclusions of law, we accord such findings and conclusions the same dignity as should be given a jury's verdict." *In re McFarland*, 176 S.W.3d 650, 652 (Tex. App.—Texarkana 2005, no pet.).

*Applicable Law*

"The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability for self support has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *Greco v. Greco*, No. 04-07-00748-CV, 2008 WL 4056328, at *7 (Tex. App.—San Antonio Aug. 29, 2008, no pet.) (mem. op.). In line with its purpose, "[s]pousal maintenance is allowed "only under 'very narrow' and 'very limited circumstances.'" *Kelly v. Kelly*, 634 S.W.3d 335, 363 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *Dalton v. Dalton*, 551 S.W.3d 126, 130 (Tex. 2018)). Before a trial court may award spousal maintenance, the spouse seeking maintenance must show they are statutorily eligible. TEX. FAM. CODE § 8.051.

Section 8.051 of the Texas Family Code provides the framework for spousal maintenance eligibility. *Id*. If the spouse seeking maintenance satisfies the eligibility requirements, the trial court has the discretion to award maintenance. *Id*.; *Saucedo v. Aguilar-Saucedo*, No. 04-21-00298-CV, 2022 WL 4492099, at *1 (Tex. App.—San Antonio Sept. 28, 2022, no pet.) (mem. op.).

"When, as here, a divorce is sought in a marriage lasting ten years or longer, a spouse is eligible to seek spousal maintenance if the spouse lacks (1) sufficient property, including property awarded to the spouse in the divorce proceeding, to meet the spouse's minimum reasonable needs, and (2) the ability to earn sufficient income to provide for the spouse's minimum reasonable needs." *Saucedo*, 2022 WL 4492099, at *1; TEX. FAM. CODE § 8.051(2)(B). "In addition, when, as here, a party seeks spousal maintenance under subsection (2)(B), there 'is a rebuttable presumption that [spousal] maintenance . . . is not warranted unless the spouse seeking maintenance has exercised diligence in: (1) earning sufficient income to provide for [her] minimum reasonable needs; or (2) developing the necessary skills to provide for [her] minimum . . . needs' while the parties were separated and the case was pending." *In re Cooper*, No. 06-22-00093-CV, 2023 WL 3766574, at *2 (Tex. App.—Texarkana June 2, 2023, no pet.) (mem. op.) (quoting TEX. FAM. CODE § 8.053(a)). "The term 'minimum reasonable needs' is not defined in the Family Code." *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). Rather, "determining what the 'minimum reasonable needs' are for a particular individual is a fact-specific determination which must be made by the trial court on a case-by-case basis." *Id.* "While a list of expenses is helpful, such a list is not the only evidence upon which a trial court can determine a person's 'minimum reasonable needs.'" *Id.*

### Application

#### A. Statutory Eligibility

The trial court issued the following findings of fact and conclusions of law relevant to Stacy's eligibility for spousal maintenance: the duration of the marriage was longer than ten years, and Stacy lacks the ability to earn sufficient income to provide for her minimum reasonable needs; Stacy will lack sufficient property, including her separate property, on the dissolution of the marriage to provide for her minimum reasonable needs; Stacy has exercised diligence in earning

sufficient income to provide for her minimum reasonable needs; and Stacy has exercised due diligence in developing the necessary skills to provide for her minimum reasonable needs during a period of separation and during the time the suit for dissolution of marriage was pending. There is evidence in the record to support these conclusions. *Elabd*, 589 S.W.3d at 284; *McFarland*, 176 S.W.3d at 652.

At trial, Stacy testified she worked a little after college before she became a homemaker raising the parties' children. She testified that she worked at a daycare between 1994 and 2006, then quit to go to college, earning a degree in psychology. After college, Stacy testified that she worked briefly before quitting in 2011 to be a homemaker again and then worked sporadically between 2011 and 2021. After the parties separated in 2021, Stacy began working as an investigator for the Texas Department of Family and Protective Services (the "Department"). Stacy testified that her net income was approximately $3,100 per month, that she had just received a raise, and that she would not be eligible for another raise for at least a year and a half.

On appeal, James contends Stacy's income is $4,554.67 per month because her paystubs admitted into evidence show she earned a significant amount of overtime pay during the fiscal year. At trial, Stacy testified that the amount of overtime pay she made that year was not typical, and she did not expect to earn a similar amount going forward. Stacy testified that overtime is not guaranteed and that she only had the opportunity to earn overtime pay because the Department was short-staffed. The trial court's ruling and findings do not indicate which figure it used as a base for Stacy's monthly income. Assuming the trial court used Stacy's base salary without anticipating overtime pay when calculating her income, we cannot say it abused its discretion. *See Day v. Day*, 452 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (considering base monthly income rather than combining base with overtime hours); *Stone v. Stone*, 119 S.W.3d 866, 869 (Tex. App.—Eastland 2003, no pet.).

In the decree, Stacy was awarded three vehicles,[2] fifty percent of James's retirement plan, and a cash payment of $5,980. Additionally, Stacy was awarded one-half of the net proceeds from the future sale of the marital home. Stacy's monthly financial sheet admitted into evidence reflected the monthly expenses for both parties. Excluding the property awarded to James in the decree, Stacy's monthly expenses totaled $2,886.30. Although not included in Stacy's list of expenses, she testified that rent for an apartment would be about $1,200. James did not object to Stacy's list of expenses nor contradict her testimony regarding a rental expense. As a result, Stacy's claimed expenses totaled $4,086.30.

Viewing the evidence in the light most favorable to the trial court's ruling, Stacy's monthly financial sheet, in addition to her testimony at trial, constitutes evidence that her minimum reasonable needs are $4,086.30 per month. *See Yarbrough v. Yarbrough*, 151 S.W.3d 687, 691–92 (Tex. App.—Waco 2004, no pet.) (holding the parties' filings containing their debts and monthly expenses constituted adequate evidence of minimum reasonable needs); *In re Gonzalez*, No. 07-05-0205-CV, 2006 WL 3102303, at *3 (Tex. App.—Amarillo Nov. 2, 2006, no pet.) (mem. op.); *see also Gordon v. Gordon*, No. 14-10-01031-CV, 2011 WL 5926723, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.) (noting mere minimal employment income and the fact that a spouse has a college degree do not independently render a spouse ineligible for maintenance).

James further argues Stacy could meet her minimum reasonable needs by selling one of the cars she was awarded in the decree—a 2004 truck—or that her minimum needs will be met when she receives half of the net proceeds from the prospective sale of the marital home. Parties are not obligated to "liquidate all available assets or incur new debt" to meet their minimum

---

[2] Testimonial evidence at trial established that one of the vehicles had the transmission removed and, thus, was not drivable.

reasonable needs in the short term. *Trueheart v. Trueheart*, No. 14-02-01256-CV, 2003 WL 22176626, at *3 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op.). The record shows the home could not be sold without significant repairs being performed, and after the repairs were completed, the trial court found it was unable to determine the net equity, if any, Stacy would receive. Likewise, the trial court heard conflicting testimony regarding the value, if any, of the 2004 truck awarded to Stacy. Where there is conflicting testimony, such as here, we defer to the trial court's credibility determination and resolve the conflict in favor of the trial court's ruling. *Elabd*, 589 S.W.3d at 284; *McFarland*, 176 S.W.3d at 652.

Considering all of the evidence in the light most favorable to the trial court's ruling, we hold there is evidence supporting the trial court's ruling that Stacy carried her burden to rebut the statutory presumption against spousal maintenance. *See Elabd*, 589 S.W.3d at 285. The trial court's findings and conclusions, supported by the evidence adduced at trial, show: (1) James and Stacy were married for more than ten years; (2) Stacy was a homemaker for the majority of the parties' marriage; (3) Stacy exercised diligence after the parties separation by gaining employment with the Department; (4) including the property awarded to her in the divorce, Stacy lacks sufficient property to meet her minimum reasonable needs; and (5) Stacy is unable to earn sufficient income ($3,100) to meet her minimum reasonable needs ($4,086.30). *See* TEX. FAM. CODE §§ 8.051(2)(B), 8.053(a). Accordingly, we cannot say the trial court abused its discretion in determining Stacy is eligible for spousal maintenance. Therefore, we overrule James's first two issues and next review his final two issues addressing the awarded amount and duration.

### B. Amount and Duration

In his final two issues, James argues that the trial court erred by awarding Stacy spousal maintenance in the amount of $2,000 per month for five years. Because the two issues are intertwined, we address them together. When, as here, the spouse seeking maintenance carries her

burden to show she is statutorily eligible, the nonexclusive factors a trial court shall consider in determining the "nature, amount, duration, and manner of periodic" spousal maintenance payments include:

> (1) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage; (2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training; (3) the duration of the marriage; (4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance; (5) the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable; (6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common; (7) the contribution by one spouse to the education, training, or increased earning power of the other spouse; (8) the property brought to the marriage by either spouse; (9) the contribution of a spouse as homemaker; (10) marital misconduct, including adultery and cruel treatment, by either spouse during the marriage; and (11) any history or pattern of family violence.

TEX. FAM. CODE § 8.052. A trial court exercising its discretion in awarding maintenance must limit its order to the lesser of $5,000 per month or 20 percent of the obligor's monthly gross income. *Id.* § 8.055(a)(1), (2).

Here, the trial court's findings of fact and conclusions of law detail the section 8.052 factors it considered in determining James should pay $2,000 per month for five years. Of the factors the trial court considered, there is evidence in the record to support its findings, including:

- Stacy lacks the ability to earn sufficient income to provide for Stacy's minimum reasonable needs independently, considering the spouse's financial resources on the dissolution of the marriage.

- Stacy was a homemaker for the majority of the parties' marriage. Stacy was a homemaker for the period of 1994 to 2006 and again from 2011 to 2021.

- Throughout the majority of the parties' marriage, Stacy was responsible for raising the parties' children and maintaining the martial residence while James was working away

from the home an average of two weeks out of every month, prohibiting Stacy from being able to be gainfully employed on any full-time basis.

- Stacy's employment history affected her ability to earn sufficient income to meet her minimum reasonable needs.

- Stacy became employed full-time for the first time since 2011 as a CPS investigator for the Department in April 2021.

- Stacy is not eligible to receive any additional overtime on a regular basis or training pay to supplement her income.

- Stacy is not eligible for a raise for at least one and one-half years.

- James worked in the oilfield through the entire course of the parties' marriage and continues to work in the oilfield grossing approximately $280,000–$309,000 per year. The net resources of James are approximately $20,000 per month.

- James committed acts that resulted in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common.

- James knowingly and willfully violated the Temporary Orders entered on March 8, 2021 by disposing of assets by gambling, purchasing pornography or sexual services, and transferring monies and/or purchasing gifts for individuals that are not his spouse.

- James regularly provided his live-in girlfriend with approximately $2,000 per month in cash for rent from community property funds.

- James spent thousands of dollars of community property funds on traveling with his girlfriend. James spent community property funds on dining and gifts for his girlfriend. James spent community property funds on repairs to his live-in girlfriend's residence.

- James spent community funds on purchasing and sending gift cards to women he met virtually on OnlyFans.

- James was only authorized to make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit and to make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation, and medical care.

- James spent approximately $18,000 per month during the pendency of this divorce, which James could not account for.

- James incurred excessive debt and paid off in full all of his credit card debts using community property funds, in violation of the Temporary Orders.

- Stacy lacks sufficient property on dissolution of the marriage to provide for her minimum reasonable needs.

- Stacy cannot withdraw the approximate $30,000 awarded to her from James's retirement/pension without incurring a significant pre-payment penalty.

- Stacy is responsible for paying approximately $15,000 in debt, including her student loan payment.

- The parties' marital property home, and only asset, has not been sold and is not listed for sale. It is impossible to determine the net equity, if any, the parties will receive. Stacy testified to the extensive and expensive renovations that would be required, of which James is responsible for the payment of and will be reimbursed from the sale proceeds, thus diminishing her portion of the net equity.

- The payment of spousal maintenance in the amount of two thousand dollars per month is less than ten percent of James's gross monthly income.

- Stacy needs additional time to obtain sufficient education, training, and employment skills to earn sufficient income to meet her minimum reasonable needs.

Specifically, the amount awarded—$2,000 per month—is within the discretionary bounds of the statutory mandate as it is less than $5,000, but not more than 20 percent of James's gross monthly income. *Id.* § 8.055(a)(1), (2). Accordingly, the trial court, guided by the amount range set by the legislature, acted within its discretion by awarding Stacy $2,000 a month for spousal maintenance.

Finally, addressing James's fourth issue challenging the five-year duration of the maintenance, because Stacy and James were married for more than twenty years—but less than thirty years—the trial court had the discretion to award Stacy spousal maintenance for a maximum of seven years. *Id*. § 8.054(a)(1)(B). Nevertheless, because the trial court did not find Stacy suffered from a disability, was the custodian of a child, or another compelling impediment was present restricting her from earning sufficient income to provide for her minimum reasonable needs, the trial court was statutorily obligated to limit the duration of maintenance to the shortest

reasonable period that would allow Stacy to earn sufficient income to provide for her minimum reasonable needs. *Id*. § 8.054(a)(2).

Considering the entirety of the trial court's findings in conjunction with the record, we observe the record is replete with evidence to support the trial court's duration award, including, *inter alia*: the parties' financial discrepancy, considering the assets awarded separately in the decree; the length of time before Stacy is eligible for another raise; Stacy's inability to benefit in the near future from the sale of the marital home due to the necessity of extensive repairs; Stacy's inability to benefit in the near future from her proportionate award of James's retirement plan without incurring a significant pre-payment penalty; the length of the marriage; Stacy's support for the martial home as a homemaker for the majority of the marriage while James was away; James's acts that resulted in the depletion of the community estate; and James's adultery. *See id*. § 8.052(1)–(10). Reviewing the entire record and deferring to the trial court's findings of fact and conclusions of law, we hold the trial court did not act arbitrarily, unreasonably, or without regard to guiding legal principles in determining five years is the shortest reasonable period that allows Stacy to earn sufficient income to provide for her minimum reasonable needs. Accordingly, we conclude the trial court did not abuse its discretion in setting the duration of spousal maintenance awarded to Stacy to five years. We overrule James's third and fourth issues.

## CONCLUSION

Having overruled all four of James's appellate issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice