**Martin E. ROBERTS, Appellant**

v.

**Margaret D. ROBERTS, Appellee**

No. 04–16–00170–CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: May 10, 2017

Jean S. Brown, Leigh Cutter, Jean Brown Family Law, San Antonio, TX, for Appellant.

Margaret D. Roberts, San Antonio, TX, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Irene Rios, Justice

## OPINION

Irene Rios, Justice

### INTRODUCTION

This is the second appeal from a divorce proceeding between Martin Roberts and Margaret Roberts. In the previous appeal, this en banc Court affirmed in part and reversed in part the trial court's order of divorce decree. This Court remanded the cause to the trial court for determination of "a just and right division of the marital estate and proper spousal maintenance determination." *See Roberts v. Roberts*, 402 S.W.3d 833, 840–41, 843 (Tex. App.–San Antonio 2013, no pet.).

Following remand, the trial court entered an "Order on Issues Remanded by the Fourth Court of Appeals" (Remand Order). Martin appeals, complaining the trial court abused its discretion in its division of the community estate and in its award of spousal maintenance to Margaret. We reverse the trial court's Remand Order with regard to its division of the community estate and remand for determination of a just and right division. We reverse the trial court's Remand Order with regard to its award of spousal maintenance. We modify the divorce decree to remove the award of spousal maintenance and affirm this portion of the divorce decree as modified.

### BACKGROUND

Martin and Margaret married on March 8, 1997, and had two children together. Martin filed for divorce in 2009. In 2010, the case went to trial before a jury on a single issue of geographical restriction of Margaret's residence sought by Martin. The trial court heard the remaining non-jury issues, which included possession of and access to the children, characterization and division of property, and spousal maintenance. In the first trial, the trial court ordered a disproportionate division of the marital estate and ordered Martin to pay spousal maintenance in the amount of $1,550 per month for thirty-six months and $1,000 per month for an indefinite period thereafter. The trial court awarded Margaret her separate property reimbursement claim for $41,000 and fulfilled this reimbursement through the equity in the marital residence that was awarded to Margaret. Martin appealed.

In the first appeal, this en banc Court affirmed in part and reversed in part the trial court's order, concluding that $32,000 was mischaracterized as separate property. The en banc Court remanded the cause

for determination of a just and right division of the marital estate in light of this conclusion and of spousal maintenance in light of the trial court's division of the community property. *See Roberts*, 402 S.W.3d at 837–39.

Upon remand, the trial court determined "only $9,000 of the original $41,000 claimed separate property [was] deemed the separate property of MARGARET D. ROBERTS." With regard to the division of community assets, the trial court determined:

> ... all assets specifically awarded in the Final Decree of Divorce to each spouse remains just and right.

> The Court changes its original ruling of a 60/40 division of the property assets and now declines to affix a percentage to the division of the property/assets.

> Based on all evidence and argument ... the Court finds that the division of assets in the Final Decree of Divorce continues to be just today.

Upon remand for determination of spousal maintenance, the trial court found that Margaret "is disabled and spousal support shall remain the same per the Final Decree of Divorce rendered on October 7, 2010", that is, $1,550 per month for thirty-six months and $1,000 per month for an indefinite period thereafter. Although Martin requested findings of fact and conclusions of law and filed a past due notice, the trial court issued none.

## ANALYSIS

### Spousal Maintenance

In his second point of error, Martin asserts the trial court abused its discretion by awarding spousal maintenance to Margaret.[1] First, Martin contends Margaret failed to demonstrate she is eligible for spousal maintenance because she failed to show she lacked sufficient property to provide for her minimum reasonable needs. Second, even if Margaret did make this demonstration, Martin contends she failed to rebut the statutory presumption against an award of spousal maintenance because she did not present credible evidence of her incapacitating disability.

We will address Martin's second argument first: whether Margaret satisfied her burden to show she suffers from an incapacitating disability.

### Standard of Review

We review the trial court's decision to award spousal maintenance under an abuse of discretion standard of review. *See Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.–San Antonio 2011, pet. denied). Absent a clear abuse of discretion, we do not disturb the trial court's decision to award spousal maintenance. *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.–Corpus Christi 2002, no pet.). Under this standard of review, the appropriate inquiry is whether the trial court's assessment of spousal maintenance was arbitrary or unreasonable. *Garcia v. Garcia*, 170 S.W.3d 644, 649 (Tex.App.–El Paso 2005) (citing *Smithson v. Cessna Aircraft Company*, 665 S.W.2d 439, 443 (Tex. 1984)). Therefore, we must "determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable." *Garcia*, 170 S.W.3d at 649.

1. We address the appellate issues out of the order in which they were presented because our determination of Martin's second issue pertaining to the spousal maintenance award informs determination of the first issue pertaining to a just and right division of the community property.

■ The trial court may exercise its discretion to award spousal maintenance only if the party seeking maintenance meets specific statutory eligibility requirements. *Slicker v. Slicker*, 464 S.W.3d 850, 859 (Tex. App.–Dallas 2015, no pet.). Texas Family Code Section 8.051 provides that a trial court may award spousal maintenance only if the duration of the marriage was ten years or longer and the spouse seeking maintenance:

> lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as is limited by Section 8.054, and the spouse seeking maintenance: (A) is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability. . . .[2]

TEX. FAM. CODE ANN. § 8.051 (Act of May 25, 2005, 79th Leg., R.S., ch. 914, § 2, 2005 Tex. Gen. Laws 3146, 3146–47, eff. Sept. 1, 2005). Section 8.054 provides: if a spouse seeking maintenance is unable to support herself through appropriate employment because of an incapacitating physical or mental disability, the court may order maintenance to continue indefinitely for as long as the disability continues. TEX. FAM. CODE ANN. § 8.054.

■ In the Remand Order, under the heading of "spousal maintenance", the trial court stated its finding that "MARGARET D. ROBERTS is disabled". As fact finder, the trial court may reasonably infer an individual's incapacity from circumstantial evidence or the competent testimony of a lay witness. *Reina v. Gen. Accident Fire & Life Assur. Corp.*, 611 S.W.2d 415, 417 (Tex. 1981) (no medical evidence of disability required in case decided under former workers' compensation statute); *Pickens v. Pickens*, 62 S.W.3d 212, 215–16 (Tex. App.–Dallas 2001, pet. denied). A physical disability or incapacity need not be proven by medical evidence. *Reina*, 611 S.W.2d at 417; *Pickens*, 62 S.W.3d at 216; *Galindo v. Galindo*, 04-13-00325-CV, 2014 WL 1390474, at *2 (Tex. App.–San Antonio Apr. 9, 2014, no pet.) (mem. op.) (upheld disability finding based solely upon testimony of party seeking spousal maintenance). "In fact, the testimony of the injured party will support a finding of incapacity even if directly contradicted by expert medical testimony." *Pickens*, 62 S.W.3d at 216 (citing *Reina*, 611 S.W.2d at 417); *Galindo*, 2014 WL 1390474, at *2. As noted in Texas jurisprudence, there is "no authority directly addressing the quantum of evidence required to prove incapacity in a

---

**2.** The issues presented in this appeal fall within the purview of Chapter 8 of the Texas Family Code. At the time the divorce proceeding was filed in 2009, the case was governed by the version of Chapter 8 that became effective on September 1, 2005. Chapter 8 has been amended twice during the pendency of this appeal: on September 1, 2011 and September 1, 2013. The "Historical and Statutory Notes" of the 2011 amendment state, "[t]he changes in law made by this Act apply only to a ... proceeding for maintenance that was commenced on or after September 1, 2011. A ... proceeding for maintenance that was commenced before that date is governed by the law in effect on the date on which the suit or proceeding was commenced, and the for-

mer law is continued in effect for that purpose." The "Historical and Statutory Notes" of the 2013 amendment state, "[t]he changes in law made by this Act to Chapter 8, Family Code, apply to an order for maintenance ... under Subchapter B, Chapter 8, Family Code, regardless of whether the order was rendered ... before, on, or after the effective date ... of this Act." The changes in law made by the 2013 amendment do not pertain to the issues in this appeal. Consequently, the 2005 version of Chapter 8 governs this case, as this was the statute in effect on the date the divorce proceeding was filed in 2009. Therefore, all citations to Chapter 8 of the Texas Family Code reference the 2005 version.

spousal maintenance action." *Galindo*, 2014 WL 1390474, at *2 (quoting *Pickens*, 62 S.W.3d at 215; *see also Smith v. Smith*, 115 S.W.3d 303, 309 (Tex. App.–Corpus Christi 2003, no pet.)).

In *Galindo*, this Court recognized the lack of authority addressing the quantum of evidence required to prove disability in a spousal maintenance action and recognized the fact finder may reasonably infer an individual's incapacity from that spouse's own testimony, alone. *See Galindo*, 2014 WL 1390474, at *2. This Court held the wife's testimony alone supported the spousal maintenance award even though she "[did] not consider herself disabled." *Id.* at *2–3. In *Galindo*, Wife testified she was diagnosed by a doctor to have a "neuromuscular disorder of the intestinal track". *Id.* at *1–2. She testified the disorder caused her "sudden onset symptoms" and severe pain that at times was "so bad that [she] just start[ed] vomiting and going to the bathroom and [couldn't] move … [She] just [had] to go to the hospital." *Id.* at *2. In addition, Wife presented evidence the condition caused her to suffer from anxiety. *Id.* To treat the medical and psychological issues associated with her diagnosed condition, she took "anxiety medication, ibuprofen, a muscle relaxer, and receive[d] a 'bilateral splanchnic nerve block,' which is an injection used to treat her pain." *Id.* The testimony revealed "the nerve block alone impair[ed] her for '[s]ometimes two, three days, depend[ing] on how the nerve block went, how much medicine they had to give' her." *Id.*

In *Pickens*, the Dallas Court of Appeals also recognized the lack of authority addressing the quantum of evidence required to prove disability in a spousal maintenance action and that the fact finder may reasonably infer an individual's incapacity from that spouse's own testimony alone. *See Pickens*, 62 S.W.3d at 215. The Dallas Court concluded the evidence was sufficient to support the trial court's award of spousal maintenance based upon a finding that the party was disabled. *Id.* at 216. In *Pickens*, Wife testified she suffered from a variety of conditions and "medical problems". The medical records from two doctors corroborated this testimony by showing the wife had undergone a bilateral mastectomy to remove ruptured silicone implants, had multiple surgeries to remove recurrent silicone granulomas on the chest wall and would likely require additional surgical procedures for this problem. Her medical records also revealed she was diagnosed with chronic hepatitis C." *Id.* Wife testified she was unable to work "because she fatigue[d] easily, she [was] taking the anti-anxiety medication Prozac, and she suffer[ed] from irritable bowel syndrome, breast and liver pain, rheumatoid arthritis, depression, and glaucoma." *Id.* She further testified she had been bedridden seventy-five percent of the time in the four months preceding the trial and had lost weight, weighing only eighty-eight pounds. Wife also presented a narrative report from a rehabilitation consultant who established a causal link between these diagnosed conditions and symptoms and her disability. The rehabilitation consultant described her medical and physical restrictions and limitations and opined Wife was disabled "from working in a full-time capacity in any occupation and that she will be unable to support herself through employment on an indefinite basis." *Id.*

### *Evidence of Disability*

 Here, as in *Galindo*, Margaret relied solely upon her own testimony to support her claim of disability as a basis for spousal maintenance. In the original divorce proceeding and during the remand hearing, Margaret testified she was exposed to carbon monoxide beginning in the spring of 1998 and continuing to January

2001, before the children were born. Margaret also testified to many symptoms and ailments she suffered since 2001 which she believed were caused by this exposure to carbon monoxide. Margaret testified that, collectively, these symptoms and ailments amounted to a "disability". Specifically, Margaret stated,

> I have a heart murmur. I have heart arrhythmia. I have nerve pain. My skin feels like its burning a lot of the time. Stress ... seems to make my pain a lot worse. I get terrible headaches. I can only sleep for a short amount of time. And I can only usually stay awake for a short amount of time. Ideally to manage my pain, I have to get flat. I got low blood pressure.

Margaret testified her condition causes her to be slow in understanding things and slow to process information. She gets confused and flustered easily and requires things to be explained repeatedly. Margaret testified she experiences high anxiety, has trouble finding words to express herself, and cannot multitask.

Finally, Margaret testified she was never diagnosed by a medical doctor of carbon monoxide poisoning, never sought medical care with regard to any of the listed ailments or conditions, and never received any medical diagnosis of any condition, illness or ailment. Margaret testified she does not take any medication, and the only time she has seen a doctor since 2001 is for care related to her two pregnancies. While it might be implied, Margaret did not testify specifically that any single condition or that her collective "disability" precluded her from obtaining gainful employment.

Unlike *Galindo* and *Pickens*, Margaret's testimony in this case does not support a finding that Margaret is "disabled" within the context of the Texas Family Code to warrant an award of spousal maintenance. Unlike *Galindo*, in which the wife testified to a diagnosis, symptoms, treatment of a recognized condition, and hospitalizations, here Margaret testified to a variety of ambiguous and vague symptoms and ailments which she asserted collectively created her "disability". Margaret did not present evidence or testimony of an incapacitating physical or mental disability which prevents her from obtaining and maintaining employment to support herself. Nor did she present evidence or testimony of a causal link between the sum of the asserted ailments and any inability to obtain gainful employment because of those ailments. Margaret's testimony of her numerous ailments alone without a connection to a certain disability or disabling condition was not probative evidence to support the trial court's finding she has an incapacitating permanent physical or mental disability that precludes her from obtaining or maintaining gainful employment.

■ While the testimony of the party seeking spousal maintenance alone may support a finding of disability, this testimony must still be sufficient and probative to establish a disability exists and to establish this disability prevents that party from obtaining gainful employment. *See Pickens*, 62 S.W.3d at 216 (citing *Reina*, 611 S.W.2d at 417); *Galindo*, 2014 WL 1390474, at *2; *Smith*, 115 S.W.3d at 309. Although the quantum of evidence is not defined by Texas jurisprudence, we hold the party seeking spousal maintenance must still present probative evidence that rises above a mere assertion that unsubstantiated symptoms collectively amount to an incapacitating disability. Testimony or evidence presented must be more probative than the party's mere assertion that unsubstantiated symptoms amount to an incapacitating disability.

After reviewing all the testimony, we conclude the quantum of substantive and probative evidence is insufficient to sup-

port the trial court's determination that Margaret is disabled to an incapacitating degree. *See Garza*, 217 S.W.3d at 549; *Pickens*, 62 S.W.3d at 216; *Galindo*, 2014 WL 1390474, at *2. As a result, the trial court erred by awarding spousal maintenance based upon its finding that Margaret is disabled as defined within Chapter 8 of the Texas Family Code.

We sustain Martin's second issue.

Based upon this conclusion, we need not review Martin's issues on appeal pertaining to the duration of the spousal maintenance award and Margaret's alleged failure to overcome the statutory presumption.[3] *See* Tex. R. App. P. 47.1.

**Division of Community Property**

In his first point of error, Martin argues the trial court abused its discretion in its division of the community property because the disproportionate division of the community estate is manifestly unfair and is not supported by the evidence upon application of the factors established in *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). Martin contends that because the trial court originally mischaracterized $32,000 as Margaret's separate property, on remand he "should have had a larger portion of the marital estate awarded to him."

*Standard of Review*

The Texas Family Code provides a trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ."

3. Martin argues further that Margaret failed to overcome the statutory presumption that spousal maintenance is not warranted by failing to prove she exercised diligence in seeking suitable employment. However, this presumption does not apply to a person eligible for spousal maintenance because of an incapacitating physical or mental disability. Tex. Fam.

Tex. Fam. Code Ann. § 7.001 (West 2006). We review this division of the estate under an abuse of discretion standard of review. *Murff*, 615 S.W.2d at 698; *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.–San Antonio 2006, no pet.). In family law cases the abuse-of-discretion standard of review overlaps with the traditional sufficiency-of-the-evidence standards of review. *Garza*, 217 S.W.3d at 549. Therefore, upon review of the trial court's division of property, we engage in a two pronged inquiry: "(1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion?" *Monroe v. Monroe*, 358 S.W.3d 711, 719 (Tex. App.–San Antonio 2011, pet. denied) (quoting *Garza*, 217 S.W.3d at 549); *Palaez v. Juarez*, 04-14-00022-CV, 2014 WL 7183483, at *3 (Tex. App.–San Antonio Dec. 17, 2014, pet. denied) (mem. op.).

Under the first prong, legal and factual insufficiency are not independent grounds of reversible error; instead, they constitute factors relevant to our assessment whether the trial court abused its discretion. *Garza*, 217 S.W.3d at 549; *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.–Dallas 2005, pet. denied). Under the second prong, appellate review begins with the presumption that the trial court properly exercised its discretion, and therefore, the property division will only be disturbed if the trial court ordered a division that is manifestly unfair and unjust. *Murff*, 615 S.W.2d at 699; *Evans v. Evans*, 14 S.W.3d 343, 345–46 (Tex. App.–Houston [14th Dist.] 2000, no pet.).

Code Ann. § 8.052; *K.T. v. M.T.*, 02-14-00044-CV, 2015 WL 4910097, at *13 (Tex. App.–Fort Worth Aug. 13, 2015, no pet.) (mem. op.). In any event, because we conclude the trial court erred by finding Margaret is disabled, we need not address this issue. *See* Tex. R. App. P. 47.1.

Generally, a trial court in a divorce proceeding has wide latitude in the exercise of its discretion to divide the marital estate. *Murff*, 615 S.W.2d at 698; *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 914 (Tex. App.–Beaumont 2006, no pet.). It abuses its discretion "when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles." *Tellez v. Tellez*, 345 S.W.3d 689, 690 (Tex. App.–Dallas 2011, no pet.). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision." *Garza*, 217 S.W.3d at 549. We consider every reasonable presumption in favor of the trial court's division of property. *See Murff*, 615 S.W.2d at 698.

### Applicable Law

In dividing the marital estate, the trial court is not required to divide it equally, but may order an unequal division when a reasonable basis exists for doing so. *Murff*, 615 S.W.2d at 698–99; *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.–San Antonio 2007, no pet.). Factors to consider in dividing the estate include the spouses' capacities and abilities; benefits the non-fault party would have derived from continuation of the marriage; business opportunities; education; the parties' relative physical conditions; the parties' relative financial conditions and obligations; disparity of ages, the size of the separate estates; the nature of the property; and disparities in earning capacities and incomes. *See Murff*, 615 S.W.2d at 699; *Palaez*, 2014 WL 7183483, at *5; *Monroe*, 358 S.W.3d at 719–20. The circumstances of each marriage dictate what factors should be considered in division of the marital estate. *Young v. Young*, 609

S.W.2d 758, 761 (Tex. 1980); *Palaez*, 2014 WL 7183483, at *5.

### The Evidence and Findings

The record reflects that at the time of divorce, the community estate consisted of the couple's unencumbered home stipulated to have a value of $140,000, two cars with liens, Martin's Navy retirement pension, various other retirement and savings accounts totaling $112,905.44, and consumer credit card debt of $22,960.

Upon remand, the trial court found Margaret was disabled and also determined Margaret was entitled to separate property of $9,000, rather than its previous finding of $41,000; however, the trial court did not assess disbursement of the $32,000 difference in community property. The trial court declined to affix a percentage to the division of the property assets and found the division of assets in the Final Decree of Divorce to be just.

The divorce decree states the marriage was dissolved "on the ground of insupportability." The divorce decree and the trial court's order on remand awarded Margaret the marital residence, sixty percent of the community interest in Martin's Navy retirement pension, a 2009 Toyota Corolla with $7,219.00 in net equity, forty-four percent of the retirement and investment accounts totaling $49,800, and responsibility for credit card debt totaling $700. Martin was awarded the 2008 Toyota Camry with $5,910.00 in net equity, forty percent of the community interest in his Navy retirement pension at the time of divorce, fifty-six percent of the other retirement and investment accounts totaling $63,105.44, and responsibility for credit card debt totaling $22,260.00.[4]

---

4. All values and debt balances are undisputed and reflect the balance at the time of divorce in 2011.

*Application*

Under the first prong of appellate review, we conclude the record contains sufficient evidence upon which the trial court could determine the division of property. Both parties testified at both proceedings regarding the applicable *Murff* factors. The reporter's records from the original divorce proceeding were admitted into evidence for the remand hearing. Although the parties' testimony was conflicting, the testimony pertaining to the *Murff* factors provided a basis for the trial court's division of the community property. Consequently, under the first prong, the record contains sufficient evidence to support the trial court's determination of division of community property. *See Murff*, 615 S.W.2d at 699; *Garza*, 217 S.W.3d at 549.

■ Next, under the second prong of appellate review, we must determine whether the trial court erred in its application of discretion. That is, beginning with the presumption that the trial court properly exercised its discretion, we must determine whether the trial court's division of the community estate is manifestly unfair and unjust taking into consideration the *Murff* factors. *See Murff*, 615 S.W.2d at 699.

The trial court granted a no fault divorce. At the time of the remand, Margaret and Martin were both in their mid-forties. Both are well-educated. Martin holds a bachelor's degree from the U.S. Naval Academy as well as a Master's degree. Margaret holds a bachelor's degree from St. John's University and began a Master's program at UTSA but has not completed it. She is trained to teach middle school and high school curriculum. She volunteer teaches at a middle school and high school class at her church, and she is "looking forward to finding some nonprofit work."

During the marriage, Martin worked as a Naval Flight Officer. Following his Navy commitment, Martin remained in the Navy Reserves and worked in the civil service sector for the U.S. Army as an environmental compliance auditor. It is undisputed that for many years prior to separation, Martin's salary was the family's sole source of income. Martin earned approximately $87,000 per year for his job and $15,000 per year as a Navy reservist. Martin developed his career during the marriage and obtained a Master's Degree in Environmental Science that furthered his career development potential. During the marriage, Margaret did not hold any job in a consistent field nor did she develop the potential for a long-term career, as she and Martin lived in various locales depending on his employment. Margaret was unemployed at the time of the divorce and during the divorce proceedings. Margaret applied for only one "paying project" in 2012. She has not applied for any other employment between her 2010 divorce and the 2014 remand hearing.

In the prior appeal, we remanded the case to the trial court because the erroneous award of $32,000 to Margaret as her separate property had more than a de minimis effect on the trial court's just and right division of the marital property. *See Roberts*, 402 S.W.3d at 838; *see also Garza*, 217 S.W.3d at 549 ("if the trial court mischaracterized the property and that mischaracterization affected the just and right division of the community estate, we must remand the entire community estate for a just and right division based upon the correct characterization of the property"). However, it appears that, on remand, the trial court did nothing more than decrease its separate property award to Margaret from $41,000 to $9,000. The trial court did not reallocate the erroneously awarded balance of $32,000 or in any other way change the division of communi-

ty property to account for the fact that Margaret should not have been awarded $32,000 as her separate property. Instead, the trial court merely stated verbally it changed its 60/40 division of the community property, declined to affix a percentage to the division, and found the division "continues to be just." In other words, the trial court implicitly awarded the $32,000 to Margaret in the guise of community property. If the original award of $41,000 in separate property to Margaret contributed to a 60/40 division of community property in her favor, then awarding her the $32,000 as community property provided Margaret with an even larger disproportionate share of the community estate.

Further, because "the parties' relative physical conditions" are among the *Murff* factors which affect property division, and the trial court did not have the benefit of our determination that Margaret failed to establish she suffered from an incapacitating disability, the trial court's division of community property did not reflect an accurate consideration of the *Murff* factors.

Consequently, while Martin has established a higher earning ability, considering all the *Murff* factors, particularly the trial court's error in finding Margaret is disabled, we must reverse and remand the issue of the division of the community estate for a just and right division.

Martin's first point of error is sustained.

## CONCLUSION

Based upon the testimony and evidence presented, we conclude the trial court erred by finding Margaret suffered from an incapacitating disability to support an award of spousal maintenance. We reverse the portion of the trial court's Remand Order awarding spousal maintenance based upon a finding that Margaret is disabled. We reverse the portion of the divorce decree awarding Margaret spousal maintenance. We modify the divorce decree to remove the award of spousal maintenance. We affirm the modified portion of the divorce decree.

We conclude the record contains substantive and probative evidence of Margaret's abilities, financial concerns, and business opportunities. Based on this evidence, we conclude the trial court's division of property was so disproportionate as to be manifestly unfair and unjust. Thus, we reverse the portion of the trial court's Remand Order as it pertains to property division and remand this portion for determination of a just and right division of community property.