

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | § | No. 08-22-00016-CV |
| SPENCER HARRISON COTE and DAWN JANNISE COTE and | § | Appeal from the |
| | § | 85th Judicial District Court |
| IN THE INTERST OF K. G. C., a child. | § | of Brazos County, Texas |
| | § | (TC# 21-000669-CVD-85) |

## **O P I N I O N**

Spencer Cote (Father) and Dawn Cote (Mother) both appeal a final decree of divorce entered in Brazos County.[1] The decree determined the distribution of property and custody of their minor child (the Child).[2] Father complains the trial court erred when determining the geographical restrictions for the primary residence of the Child. Mother complains the trial court erred by refusing to clarify or revise the final decree of divorce as it relates to her interest in the marital residence. We affirm.

---

[1] This case was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Tenth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

[2] To protect the privacy of the Child, we do not include her name. See TEX. FAM. CODE ANN. § 109.002(d).

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married on April 16, 2016. On March 23, 2021, Father filed his original petition for divorce. At the time Father filed his petition, the Child was not yet two-years old. In his original petition, Father requested the trial court appoint both parents as joint managing conservators and divide the estate in a just and right manner. He later amended his petition to request the trial court include a geographic restriction "limited to Brazos County." Mother's answer contained a general denial and request that Father take nothing.

Shortly before trial, both parties filed their requested relief with the trial court; Mother requested she be given the right to designate the primary residence of the Child and that she be "awarded half of the market value" of the marital residence. Father requested "[n]either parent have exclusive right to determine the primary residence of the child," and a geographic restriction to Brazos and contiguous counties. Father's proposed property division asked that Mother receive a $45,000 lien on the marital estate—half of the net equity of their residence.

On September 16, 2021, a final trial was held. At the trial, Father testified he lived in Brazos County for one year when he filed his petition for divorce. He testified his parents and younger brother also live in Brazos County and are active in the Child's life. He asked the trial court limit the geographic restriction of the Child to Brazos County so she could be close to her family and support system.

Mother testified during their marriage, her brother died in an accident, and she received life insurance benefits and property in Liberty County from his estate.

Mother also testified during the pendency of the proceedings, the parties informally agreed to share custody, with Mother in Liberty County and Father in Brazos County. She agreed to share custody during the interim as a "compromise" so she could take the Child to her home in Liberty

2

County. To exchange the Child, they met in between the two counties. Travel from Father's residence in Brazos County to Mother's in Liberty County is around two and a half hours. The meeting point was an hour and a half away from Mother's residence and half an hour away from Father's.

Mother testified she planned to reside in Liberty County with their child on the inherited property which includes a three-bedroom home and 50 acres of land with horses and cattle. She testified she wanted the trial court to include Liberty County within the geographic restriction because her home, family, and support system are located there.

Mother testified Father was frequently non-responsive to her communications asking to speak to the Child when she was in his custody. For example, Mother testified Father would ignore her texts and she went multiple days without being able to speak to the Child. She further testified Father did not follow their agreement, and on one occasion he arrived a day early to pick up the Child. Mother testified the Child appeared distressed in the days after she would pick her up from Father and exhibited separation anxiety when Mother would leave her for any length of time.

During closing, Father asked the trial court to set the geographic restriction to Brazos and contiguous counties, and to divide their property equally. Mother asked the trial court to provide a just and right division of the community property and grant Mother the right to establish the Child's primary residence in Liberty County.[3]

On October 19, 2021, the trial court notified the parties of its ruling by email and set a date for hearing the entry of the decree. The ruling named Mother and Father as joint managing conservators, granted Mother the exclusive right to designate the primary residence of the Child within Brazos or Liberty Counties, and awarded her a $45,000 lien on the marital residence secured

---

[3] We note that Brazos County and Liberty County are not contiguous.

3

by an owelty lien. On November 18, 2021, the parties appeared at a hearing on entry of the decree. Both parties agreed the decree reflected the ruling from the trial court's October 19, 2021, correspondence—but Mother expressed concern the decree did not contain any mechanisms or timeline for payment of the owelty lien and asked the trial court to modify the decree to include a mechanism for payment. Father responded the decree complied with the court's emailed ruling and there was no requirement the lien contain further conditions for payment. The trial court then signed and entered the final decree as presented.[4]

Mother appealed and Father cross appealed. Mother contends the trial court erred when it failed to modify or clarify the decree to add a mechanism for payment of the owelty lien. Father contends the trial court erred by including Liberty County in the residency restrictions for the Child. We address Father's issues first.

## FATHER'S APPEAL: PRIMARY RESIDENCY RESTRICTIONS

On cross-appeal, Father brings three issues, all of which assert the trial court erred when it entered orders including Liberty County in the Child's primary residency restrictions. He contends the trial court erred in (1) granting relief not requested in Mother's pleadings; (2) finding that the parties agreed to include Liberty County in the Child's residency restrictions; and (3) including Liberty County in the residency restrictions. We address his first issue and combine issues two and three.

## STANDARD OF REVIEW

We review a trial court's order regarding conservatorship for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). We reverse only if we determine from

---

[4] On December 17, 2021, Mother filed a motion to modify, correct, or reform the judgment. and on January 14, 2022, Mother filed a "Setting Request" in which she requested a hearing on the motion be set "ASAP." No hearing was set, however, the motion was overruled by operation of law. *See* TEX. R.CIV.P. 329B(C).

the record that the decision was arbitrary and unreasonable. *See e.g.*, *Compton v. Pfannenstiel*, 428 S.W.3d 881, 886 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 240–41 (Tex. 1985). A trial court does not abuse its discretion if the record contains "some evidence of probative and substantive character to support its decision." *Matter of Marriage of Christensen*, 570 S. W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.).

In family-law cases, the abuse-of-discretion standard overlaps with traditional sufficiency standards of review. *Roberts v. Roberts*, 531 S.W.3d 224, 231 (Tex. App.—San Antonio 2017, pet. denied). Therefore, when reviewing the geographical restrictions, we consider whether "(1) the trial court had sufficient evidence upon which to exercise its discretion; and (2) the trial court erred in its application of that discretion." *Interest of I.K.G.*, No. 10-22-00043-CV, 2023 WL 2024617, at *2 (Tex. App.—Waco Feb. 15, 2023, no pet. h.) (mem. op.).

### APPLICABLE LAW

At issue is an original order in a suit affecting parent-child custody. In an original suit, the Family Code *requires* the trial court to "designate the conservator who has the exclusive right to determine the primary residence of the child." TEX. FAM. CODE ANN. § 153.134(b)(1). Once that conservator is designated, the Family Code *allows* the trial court to either establish a geographic area within which the conservator may designate the child's residence or specify that the conservator may establish the child's residency without regard to geographic location. *Id.* (A)–(B). The trial court is required to determine who will exercise what rights and duties, and the primary consideration is the best interest of the child. TEX. FAM. CODE ANN. § 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child.").

If certain requirements are met, the trial court must render an order conforming to a written agreed parenting plan. TEX. FAM. CODE ANN. § 153.133(a). When there is no such agreement, the trial court determines conservatorship in the best interest of the child. *Id.* § 153.134. The trial court has "wide latitude" to determine what is in the best interest of the child. *Gillespie*, 644 S.W.2d at 451.

## DISCUSSION

In his first issue, Father contends the trial court erred in granting a geographical restriction that Mother did not request in her pleadings. When issues not raised in pleading are tried by consent, they "shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67. During the trial, Mother testified numerous times, without any objection by Father as to lack of pleadings, she wanted the court to grant her the right to determine the Child's residency in Liberty County. We must conclude Father's complaint regarding a lack of pleadings is not preserved and the issue of geographic restriction was tried by consent. *See Compass Bank v. Nacim*, 459 S.W.3d 95, 113 (Tex. App.—El Paso 2015, no pet.) (stating that trial by consent applies "when it clearly appears from the record as a whole that the parties tried an unpled issue by consent"). Accordingly, we overrule Father's first issue.

In his second and third issues, Father contends that the trial court abused its discretion in finding the parties agreed that Liberty County should be included in the geographic restriction and in including Liberty County in the geographic restriction. The decree recites that the provisions "relating to the rights and duties of the parties with relation to the child . . . constitute the parties' agreed parenting plan," and "[t]he parties agree and IT IS ORDERED that the primary residence of the child shall be Brazos or Liberty Counties."

6

There was not an agreed parenting plan in this case. Neither party filed a proposed or an agreed parenting plan. It is clear from a review of the record that Mother wanted to live with the Child in Liberty County where she had family and a residence, and Father wanted to remain in Brazos County with the Child. At the close of the hearing, the trial court noted it could "see why this case wouldn't have settled," indicating the trial court was aware there was no agreement between the parties concerning the geographic restrictions.

When there is no written agreement conforming with the requirements of Section 153.133, the trial court has the discretion to determine conservatorship, possession, and geographical restrictions regarding a child. TEX. FAM. CODE ANN. §§ 153.133–.134. Here, the trial court heard evidence that both parents had residences and support systems; Mother's in Liberty County and Father's in Brazos County. The trial court heard evidence regarding the excellent school system in Liberty County and Mom's future employment opportunities near her home.

We believe the trial court heard sufficient evidence to exercise its discretion in determining the best interests of the child. By including both Mother and Father's counties in the geographic restrictions, the trial court assured that the Child will have frequent and continuing contact with both parents and have a stable environment and contact with her extended family in their respective counties. TEX. FAM. CODE ANN. § 153.001(a)(1)–(3). Accordingly, we conclude the trial court did not abuse its discretion in including a geographic restriction within either Liberty or Brazos County. We overrule Father's second and third issues.

## MOTHER'S APPEAL: MARITAL ESTATE INTEREST

In a single issue, with multiple sub issues, Mother contends the trial court erred when it refused to clarify or modify the final decree regarding the satisfaction of the $45,000 owelty lien

7

on the marital residence. She contends the decree contains ambiguities because it does not provide any method of payment or impose a duty on Father by which she can enforce her interest.

## STANDARD OF REVIEW AND APPLICABLE LAW

In a divorce, the trial court shall divide the marital estate in a manner the court determines is just and right with regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.001. A trial court has broad discretion in dividing the marital estate and will only be reversed for a clear abuse of discretion. *Karigan v. Karigan*, 239 S.W.3d 436, 439 (Tex. App.—Dallas 2007, no pet.). The Family Code permits a trial court to render a clarifying order "[o]n a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt." TEX. FAM. CODE ANN. § 9.008(b). "A trial judge may clarify the property division . . . in a divorce decree by specifying more precisely the manner of carrying out that property division; the court may not alter the substantive division of the property." *Karigan*, 239 S.W.3d at 438–39 (citing *Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.—El Paso 1995, no writ)); TEX. FAM. CODE ANN. § 157.423(a). Clarification orders must be consistent with the prior judgment. *Young v. Young*, 810 S.W.2d 850, 851 (Tex. App.—Dallas 1991, writ denied).

## DISCUSSION

On appeal, Mother contends the trial court erred in failing to clarify how or when her interest in the marital estate will be satisfied because the decree lacks the specificity to be enforced by contempt. *See* TEX. FAM. CODE ANN. § 9.006 (Enforcement of Division of Property).

At trial, the record shows both parties requested the marital estate be divided equally. Mother requested "she be awarded half of the market value," of the residence and Father requested

8

the same.[5] There was no dispute the net equity in the residence was $90,000. The trial court divided the net equity in the marital residence equally and ordered that Mother receive a "$45,000 lien on [the marital residence], secured by an Owelty Lien." In the division of debt, the trial court ordered Father receive the marital residence and "100% of the debt associated with [the marital residence]."

At the hearing on the entry of the decree, counsel for Mother stated to the court: "the big question that I had was the owelty lien . . . there's no mechanism to require that the owelty lien be paid back at any certain rate or accrue any kind of interest until paid or what kind of schedule or if it's payable a lump sum or in the future . . . if there's no requirement to refinance or anything like that . . ., then she can have this owelty lien forever." Counsel for Mother also told the court a letter requesting modification or clarification had been sent to the court earlier that day. Counsel for Father acknowledged the letter and said it was akin to a "motion for clarification" but stated that there was no need for a clarification because when the house sells, the owelty lien will be paid and she will get the $45,000 awarded to her.

The trial court then stated:

[T]he vast majority of this case was spent on whether or not Mom would be able to move . . . both of you asked that Mom be awarded half of the market value of the real property or half of the equity. And any way you slice it, that's what Mom got. **And there wasn't any specific request for it even to be secured. I went one step further and secured it by an owelty lien. So I don't know that I have the duty or the right or the – or the ability at this point to further impose that [Father] refinance his indebtedness . . . Nobody asked me to do that. So I didn't even consider that."**

The court further explained that "if [Father] ever sells the house, this lien will be in [the] record so that the title company will" pay off the first mortgage holder and then Mother.

---

[5] Father's proposed property division asks that Mother receive $45,000 "W to have $45,000 lien." It provides no further specifications for the divided interest.

An owelty lien is analogous to a vendor's lien creating an encumbrance which follows the land upon sale. *See Sayers v. Pyland*, 161 S.W.2d 769,772 (Tex. 1942). Accordingly, if and when the house is sold, the lien must be satisfied, and Mother will be paid. We cannot say, therefore, the original form of the division of property is not specific enough to be enforceable by contempt.

While it is true the trial court did not include an interest rate, a payment schedule, or a requirement that the house be sold within a certain time, a trial court has broad discretion in dividing the marital estate upon divorce and we cannot say the trial court here abused its discretion. *See e.g.*, *Garcia v. Garcia*, 170 S.W.3d 644, 649 (Tex. App.—El Paso 2005, no pet.) ("The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."). Therefore, we overrule Mother's issues on appeal.

## CONCLUSION

For the reasons above, the judgment of the trial court is affirmed.

SANDEE B. MARION, Chief Justice (Ret.)

March 24, 2023

Before Rodriguez, C.J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

10