**Opinion issued July 18, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00113-CV

————————————

**MOHAMMED ALI, Appellant**

**V.**

**SADIA MANZOOR, Appellee**

---

On Appeal from the 312th District Court
Harris County, Texas
Trial Court Case No. 2021-24331

---

## MEMORANDUM OPINION

This is an appeal from a final decree dissolving the marriage between Mohammed Ali and Sadia Manzoor. In the divorce decree, the trial court awarded spousal maintenance to Sadia. On appeal, Mohammed contends the trial court abused its discretion because Sadia did not meet the eligibility requirements for

maintenance.[1] We agree, and so we reverse that part of the trial court's decree awarding spousal maintenance and render judgment that Sadia take nothing on that claim.

## Background

Mohammed and Sadia married in June 2014 and have one child born during the marriage. Mohammed filed for divorce after seven years, alleging the marriage had become insupportable. He asked that he and Sadia be appointed joint managing conservators of the child.

Sadia counter-petitioned, agreeing that the marriage had become insupportable. But she also claimed that Mohammed treated her cruelly and had "a history or pattern of committing family violence" in the two years before he filed for divorce. Sadia pleaded for spousal maintenance, alleging that she would not have adequate resources on dissolution to meet her minimum reasonable needs and that she was eligible for maintenance because she experienced "domestic violence." Sadia asserted that she should be the child's sole managing conservator in her petition, but later she supported a joint managing conservatorship and had agreed to share custody with Mohammed.

At the bench trial, Mohammed and Sadia gave their opinions on why the marriage failed, how the marital property should be divided, and how their child

---

[1]     Sadia has not filed a brief on appeal.

should be parented. Relevant to spousal support, Sadia testified that she had monthly expenses of $5,088 but earned only $2,190 as a teacher at the child's school. Even with some amount of child support, she said, she would fall short of her minimum reasonable expenses each month.

She testified that she was seeking spousal support based on domestic violence. Though she did not identify any physical violence by Mohammed, Sadia testified that he was "very controlling" in the three years before their separation. She spoke of times when Mohammed threatened to leave her or kick her out of the house if she was not "obedient," denied her access to a car, took away her phone, or prevented her from accessing or knowing about their bank accounts. And she described Mohammed as "out of control" when he was angry. She testified that she feared Mohammed and was concerned that "he had a lot of guns."

Sadia presented evidence that Mohammed pleaded guilty to driving while intoxicated (DWI) in 2019 and was arrested a second time for DWI in 2021. Sadia was not present for either DWI arrest. She learned of the first arrest when Mohammed called her the next morning to get out of jail. She learned of the second arrest from public records.

She also testified that Mohammed sleepwalked, which caused her to sleep separately with the child in a locked bedroom. Mohammed did not recall his activity when he sleepwalked, but it sometimes involved dangers such as cooking while he

3

was asleep. Sadia stated that Mohammed was skeptical of western medicine and believed that his faith did not allow health insurance, but Mohammed disputed that testimony. He agreed that although he prefers "holistic medicine," the child should have health insurance in case of an accident. And he offered his initiative to obtain treatment for the child when the child had lice as evidence of his involvement in the child's medical care.

For his part, Mohammed acknowledged that his relationship with Sadia deteriorated just a couple of years after they wed. He attributed the differences in their opinions on family dynamics and parenting to differences in their religious beliefs. Mohammed described feeling "gaslighted" or "nitpicked" by Sadia and her family. And he claimed he feared for the child's safety with Sadia based on text messages in which Sadia expressed that she had become so upset with the child that she almost struck the child. Mohammed also testified about his belief that Sadia had taken and either used or hidden cash and jewelry without his consent.

Several other witnesses testified, including a family friend, G. Hashmi. Hashmi testified that Sadia and the child had stayed with his family for about a week and a half, after she got into a fight with Mohammed and the police were called. Neither Hashmi nor Sadia supplied any details about the fight. But Hashmi recalled that while Sadia and the child were at his home, Mohammed became angry and threatened to report Hashmi to child protective services or the police in retaliation.

4

When asked if Mohammed ever said anything that concerned him, Hashmi answered affirmatively and stated his disagreement with Mohammed's view that a wife must obey her husband.

The trial court also heard from a faith leader and two teachers at the child's school. The lead instructor at the school, M. Rabago, testified about Sadia's positive performance as a teacher at the school. She described the child, who was her student, as "wonderful," "easily taught," "well adjusted," and "a pleasure to have in the classroom." The second teacher, S. Ahmed, taught the child as a toddler and described the child in similar terms. The only problem either Rabago or Ahmed identified for the child was episodes of constipation in both classrooms. According to Rabago, Sadia was available to comfort the child on those occasions.

After the trial, the trial court signed a decree dissolving the parties' marriage on the ground of insupportability. In the decree, the trial court divided the marital assets; named the parties joint managing conservators of the child, with Sadia having the exclusive right to designate the child's primary residence; awarded Mohammed periods of possession under a modified standard possession order; awarded child support; and awarded $600 in monthly spousal maintenance to Sadia.

At Mohammed's request, the trial court entered findings of fact and conclusions of law. To explain its deviation from the standard possession order, the trial court cited testimony that Mohammed "had been verbally abusive to Sadia,"

5

"prohibited [her] from using the family car," "tracked the car and threatened Sadia [] he would call the police if she did not follow his rules," "took Sadia's personal phone from her," and "signed Sadia [] off of the rental apartment lease while still married." The trial court also noted the evidence that Mohammed was on bond for a second charge of driving while intoxicated and "was still drinking alcohol in excess."

On spousal maintenance, the court made several relevant findings, including that Sadia lacked sufficient resources to provide for her minimum reasonable needs and had exercised diligence either in "earning sufficient income" or "developing the necessary skills" to provide for her minimum reasonable needs. And it listed several factors it considered "in determining the nature, amount, duration and manner of periodic payments":

- each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering the spouse's financial resources on dissolution of marriage;

- the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training;

- the duration of the marriage;

- the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

6

- the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance; and

- the contribution of a spouse as a homemaker.

Mohammed has appealed the trial court's ruling on spousal maintenance only. He does not appeal the trial court's other rulings establishing the joint managing conservatorship of the child or dividing the marital estate.

## Standards of Review

We review the trial court's spousal maintenance award for an abuse of discretion. *Fuentes v. Zaragoza*, 555 S.W.3d 141, 171 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Roberts v. Roberts*, 531 S.W.3d 224, 227 (Tex. App.—San Antonio 2017, pet. denied) ("Absent a clear abuse of discretion, we do not disturb the trial court's decision to award spousal maintenance."). A trial court abuses its discretion when it rules "arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

The abuse-of-discretion standard of review overlaps with traditional sufficiency standards of review in family law cases. *Arellano v. Arellano*, No. 01-16-00854-CV, 2018 WL 284333, at *2 (Tex. App.—Houston [1st Dist.] Jan. 4, 2018, no pet.) (mem. op.). Here, legal and factual sufficiency challenges are not independent grounds for reversal; instead, they are relevant factors in assessing

whether the trial court abused its discretion. *See Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We ask whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of that discretion. *Day v. Day*, 452 S.W.3d 430, 433 (Tex. App.— Houston [1st Dist.] 2014, pet. denied).

To answer the first question, we apply the appropriate sufficiency standard. *Id.* To answer the second question, we determine whether, considering the evidence, the trial court made a reasonable decision. *Arellano*, 2018 WL 284333, at *2. "Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable." *Id.* (internal quotation omitted).

In determining whether legally sufficient evidence supports a finding, we examine the record and credit evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Syed*, 521 S.W.3d at 847 n.4. As the factfinder, the trial court is the sole judge of testimonial weight. *Willis v. Willis*, 533 S.W.3d 547, 556 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When the witness testimony is conflicting, we will not disturb the trial court's credibility determinations, and we presume that the trial court resolved any conflicts in favor of the verdict. *Syed*, 521 S.W.3d at 848. The trial court does not abuse its discretion if some evidence of a substantial and probative

8

character supports the decision. *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.); *Arellano*, 2018 WL 284333, at \*3.

This appeal also presents questions of statutory construction, which we review de novo. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). Because it is the Legislature's prerogative to enact statutes, our primary goal is to carry out the Legislature's intent. *See id.* We therefore interpret statutes based on the plain language chosen by the Legislature unless the surrounding context shows the Legislature intended a different meaning or the application of the plain language would yield absurd or nonsensical results that the Legislature could not have intended. *Id.* When the statutory text is clear, the text alone resolves the Legislature's intent. *Brazos Elec. Power Coop. v. Tex. Comm'n on Env't Quality*, 576 S.W.3d 374, 384 (Tex. 2019).

We accord a statute's terms their common, ordinary meaning unless the Legislature has defined a term, the term has a technical meaning, or the term has another meaning when read in context. *See id.* We do not interpret statutory words and phrases in isolation. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019). We also consider the statutory framework in which individual provisions reside. *See id.*; *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

## Spousal Maintenance

In his sole issue on appeal, Mohammed argues that the trial court abused its discretion by ordering spousal maintenance because no evidence showed Sadia was eligible for it under the Family Code.

Spousal maintenance is an award of "periodic payments from the future income of one spouse for the support of the other spouse." TEX. FAM. CODE § 8.001(1). The trial court may exercise its discretion and award spousal maintenance if the party seeking maintenance meets the requirements in Family Code section 8.051. *Id.* § 8.051. Under section 8.051, the court may order spousal maintenance if the maintenance-seeking spouse lacks sufficient resources to provide for the spouse's minimum reasonable needs and:

> (1) *the spouse from whom maintenance is requested* was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence, as defined by Section 71.004, committed during the marriage against the other spouse or the other spouse's child and the offense occurred:
>
>> (A) within two years before the date on which a suit for dissolution of the marriage is filed; or
>>
>> (B) while the suit is pending; or
>
> (2) *the spouse seeking maintenance*:
>
>> (A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

(B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

(C) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

*Id.* (emphasis added); *Cooper v. Cooper*, 176 S.W.3d 62, 65 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Mohammed does not challenge the trial court's finding that Sadia will lack sufficient resources upon dissolution of the marriage to provide for her minimum reasonable needs. But he contends there was no substantive or probative evidence of section 8.051's other eligibility requirements. Although the trial court did not specify the basis for spousal maintenance, we agree with Mohammed that none is supported by sufficient evidence.

### 1. Family violence offense

Under subsection 8.051(1), a spouse is eligible for spousal maintenance if the other spouse "was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence, as defined by Section 71.004," during the statutory period. TEX. FAM. CODE § 8.051(1). Neither *conviction* nor *deferred adjudication* are defined in the maintenance statute. Black's Law Dictionary defines *conviction* as:

11

1. The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty.

2. The judgment (as by a jury verdict) that a person is guilty of a crime.

*Conviction*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see Conviction*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/conviction (last visited July 9, 2023) (defining conviction as "the act or process of finding a person guilty of a crime especially in a court of law"). And it defines *deferred adjudication* as a "deferred judgment," meaning "[a] conditional judgment placing a convicted defendant on probation, the successful completion of which will prevent entry of the underlying judgment of conviction." *Deferred Adjudication*, BLACK'S LAW DICTIONARY (11th ed. 2019); *Deferred Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

There was no evidence at trial that Mohammed received deferred adjudication for any criminal offense. There was evidence of a DWI conviction. But DWI is not a criminal offense that also constitutes an act of family violence under Family Code section 71.004, as subsection 8.051(1) requires. *See* TEX. FAM. CODE §§ 71.004, 8.051(1). Acts of family violence include:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;

12

(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M), by a member of a family or household toward a child of the family or household; or

(3) dating violence, as that term is defined by Section 71.0021.

*Id.* § 71.004. DWI—defined by the Penal Code as an offense involving an intoxicated person's operation of a motor vehicle in a public place—does not satisfy any of these definitions. *See id.*; *see also* TEX. PENAL CODE § 49.04(a). Thus, there was no evidence that Mohammed was "convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence," and the trial court abused its discretion if it awarded spousal maintenance on that basis.

### 2. Incapacitating physical or mental disability

Subsection 8.051(2)(A) authorizes spousal maintenance if the maintenance-seeking spouse is "unable to earn sufficient income . . . because of an incapacitating physical or mental disability." TEX. FAM. CODE § 8.051(2)(A). "No authority directly addresses the quantum of evidence that is required to prove incapacity in an action for maintenance." *Schafman v. Schafman*, No. 01-20-00231-CV, 2022 WL 962466, at *8 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.). But the Family Code does not require the maintenance-seeking spouse to present medical evidence of an incapacitating physical or mental disability. *Roberts*, 531 S.W.3d at 228; *Pickens v. Pickens*, 62 S.W.3d 212, 215 (Tex. App.—Dallas 2001, pet. denied). The factfinder may

reasonably infer an individual's incapacity from circumstantial evidence or the competent testimony of a lay witness. *Roberts*, 531 S.W.3d at 228; *Pickens*, 62 S.W.3d at 215–16.

"In fact, the testimony of the injured party will support a finding of incapacity even if directly contradicted by expert medical testimony." *Roberts*, 531 S.W.3d at 228 (quoting *Pickens*, 62 S.W.3d at 216). But the testimony "must still be sufficient and probative to establish a disability exists and to establish this disability prevents that party from obtaining gainful employment." *Id*. at 230; *see Chafino v. Chafino*, 228 S.W.3d 467, 475 (Tex. App.—El Paso 2007, no pet.) (refusal to award spousal maintenance was not abuse of discretion because record contained no "explanation of why [wife's] ailments prevent[ed] her from returning to work as a bookkeeper"). The party seeking maintenance must present probative evidence "that rises above a mere assertion that unsubstantiated symptoms collectively amount to an incapacitating disability." *Roberts*, 531 S.W.3d at 230.

Here, the trial court could not award spousal maintenance under subsection 8.051(2)(A) because there was no evidence that Sadia has an incapacitating physical or mental disability that prevents her from earning sufficient income. The subject of physical or mental disability was not directly addressed at trial. Though not required, Sadia did not present medical testimony or records showing any physical or

14

cognitive impairment. And she did not testify that she suffers any symptoms that prevent her from working. Neither did any other witness.

No circumstantial evidence supports an inference that Sadia is physically or mentally incapacitated. *See Roberts*, 531 S.W.3d at 228; *Pickens*, 62 S.W.3d at 215. To the contrary, the evidence showed that Sadia has a master's degree in applied mathematics and is employed as a teacher at her child's school. Nothing suggested that her capacity for employment at the school or elsewhere is limited in any way because of a physical or mental disability. The school's lead instructor described Sadia as a "wonderful teacher," "very dedicated," and "extremely dependable." She expressed gratitude for Sadia as a colleague and for her work at the school.

In short, there was no substantive or probative evidence that Sadia is incapacitated because of physical or mental disability, and therefore the trial court lacked discretion to award her spousal maintenance. *See* TEX. FAM. CODE § 8.051(2)(A); *see also Roberts*, 531 S.W.3d at 228; *Chafino*, 228 S.W.3d at 475. If the trial court did so, it abused its discretion.

### 3. Inability to earn sufficient income after marriage of ten or more years

Subsection 8.051(2)(B) authorizes spousal maintenance if the maintenance-seeking spouse has been married to the other spouse for at least ten years and cannot earn sufficient income to meet her minimum reasonable needs. TEX. FAM. CODE § 8.051(2)(B). The trial court lacked discretion to award spousal

maintenance under this subsection because there was no evidence that Sadia was married to Mohammed for ten or more years. It was undisputed that Mohammed and Sadia married in June 2014. Mohammed filed for divorce seven years later, in April 2021. Sadia counter-petitioned the next month. And the trial court granted their divorce in January 2022. The marriage thus lasted less than eight years, under the minimum statutory duration. *See id.* If it awarded spousal maintenance under subsection 8.051(2)(B), the trial court abused its discretion.

### 4. Custodian of child requiring substantial care

Subsection 8.051(2)(C) authorizes spousal maintenance if the maintenance-seeking spouse is the custodian of a child "who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income." *Id.* § 8.051(2)(C). The trial court could not have awarded spousal maintenance under this subsection because there was no evidence that Mohammed and Sadia's child has a physical or mental disability that prevented Sadia from working. By all accounts at trial, the child was developing appropriately. Although the child had lice and sometimes was constipated, Sadia testified the child was healthy. One of the child's teachers described the child as "very intelligent," a fast learner, and "well-adjusted." Another teacher said the child interacted "just fine" with other children, was "very talkative," "thoughtful," a "great helper," and a "pleasure to have in the classroom." No evidence contradicted these

16

characterizations of the child or otherwise indicated that the child experiences any physical or cognitive impairment that prevents Sadia from working. *See id.* Although there was testimony that Sadia tended to or comforted the child at times when the child was constipated at school, that testimony was not presented alongside any evidence that doing so interfered with Sadia's work at the school. And the only inference the trial court could reasonably draw from the testimony of the school's lead instructor that the school was satisfied with her work performance. In other words, there was no substantive or probative evidence of Sadia's eligibility for spousal maintenance under subsection 8.051(2)(C), and the trial court lacked discretion to award spousal maintenance on that basis. *See id.*

Having concluded that the trial court lacked sufficient information on which to exercise its discretion to find that Sadia was eligible for spousal maintenance under any subsection of section 8.051, we hold the trial court abused its discretion in awarding maintenance.

We sustain Mohammed's sole issue on appeal.

## Conclusion

We reverse the portion of the final divorce decree awarding Sadia spousal maintenance and render judgment denying her claim for maintenance. The final divorce decree is affirmed in all other respects.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.